## ALLISON v. AMERICAN SURETY CO. OF NEW YORK et al.  (No. 8301.)

(Court of Civil Appeals of Texas.  Galveston. Feb. 14, 1923.)

**1. Evidence ⊚⇒154 — Evidence of search and recovery of property stolen admissible, where made with permission notwithstanding absence of search warrant.**

Where a bank carrying burglary and robbery insurance was robbed and certain funds taken, part of which were claimed to have been recovered by the sheriff from defendant, who was a friend of the person charged with the actual robbery, in an action by the insurer against the robber, defendant, and the sheriff to recover possession of such money, evidence by the officers relative to search of defendant's room, and the recovery of the money found hidden there, *held* admissible, notwithstanding the officers had no search warrant; the room being entered and the search made by defendant's permission.

**2. Evidence ⊚⇒154 — Admission of evidence wrongfully obtained not erroneous, where fault not that of party introducing it.**

Where a bank carrying burglary and robbery insurance was robbed and certain funds taken, part of which were claimed to have been recovered by the sheriff from defendant, who was a friend of the person charged with the actual robbery, in an action by the insurer against the robber, defendant, and the sheriff to recover possession of such money, evidence by the officers relative to the search of defendant's room and the recovery of the money found hidden there' was admissible, even if it should be conceded that the entry and search of defendant's room was in violation of law, since such wrongful acts could not be charged to plaintiff.

**3. Evidence ⊚⇒154—That method of obtaining pertinent evidence is wrongful does not make such evidence inadmissible.**

Where a bank carrying burglary and robbery insurance was robbed and certain funds taken, part of which were claimed to have been recovered by the sheriff from defendant, who was a friend of the person charged with the actual robbery, in an action by the insurer against the robber, defendant, and the sheriff to recover possession of such money, evidence by the officers relative to the search of defendant's room and the recovery of the money found hidden there was admissible, even if the search was in violation of defendant's constitutional rights and inspired by plaintiff, since courts do not concern themselves with the method by which parties to civil suits secure evidence.

**4. Judgment ⊚⇒151—Judgment by default held properly set aside on verbal request.**

Where defendant, who made default, who was served only six days before appearance day, had no notice of the passage of a law postponing the appearance day, the action of the trial court in setting aside the judgment rendered and allowing defendant to answer *held* not unauthorized, regardless of the fact that defendant had made a verbal request only for a new trial.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by the American Surety Company of New York against Mrs. J. A. Allison and others.  Judgment for plaintiff, and defendant named alone appeals.  Affirmed.

C. I. McFarlane, of Richmond, and J. Llewellyn, of Liberty, for appellant.

Homer Stephenson, of Houston, for appellees.

LANE, J.  This suit was brought by the appellee American Surety Company of New York against appellant, Mrs. J. A. Allison, Fred Absolon and against H. A. Collins, as sheriff, to recover possession of $800 in cash, taken from the possession of Mrs. Allison by said sheriff, and for an injunction to restrain said sheriff from delivering said cash to Mrs. Allison pending this suit, and to recover judgment against Fred Absolon for the sum of $3,500.  The temporary injunction prayed for was granted.

Citations to defendants were issued on the 1st day of March, 1921, returnable to the April term of the Sixty-First District court of Harris county, the appearance day of which at that time was April 18, 1921.  Citation was served upon Mrs. J. A. Allison the 12th day of April, 1921, only six days before the appearance day named in the citation. After the filing of the plaintiff's petition and the issuance of the above-mentioned citations, the Legislature passed an act, which took effect March 12, 1921, by which the appearance day of the theretofore April term of court was fixed as the 9th day of May, 1921, and it was provided in said act that all writs and processes returnable to the term then fixed by law were to be returnable to the term as fixed by said act.  As the citation was served on Mrs. Allison only six days before the appearance day named in the citation, and as she and her attorney had not taken notice of the passage of the law changing the appearance day to 9th day of May, she made no appearance, being under the impression that she would not have to answer until the convening of the next term of the court.  The court, however, convened on the 9th day of May, 1921, and this cause was set down for trial on the 23d day of said month, at which time interlocutory judg-

ment by default was entered, and on the 31st day of May, 1921, judgment by default in favor of the plaintiff was entered.

On the 1st day of June, 1921, during the term of court at which the judgment was entered, Mrs. Allison appeared, and made her statement as to her ignorance of the change in the appearance day of the court, and verbally requested the court to grant her a new trial, assigning as cause for such request that she did not know that she was required to answer at the term at which judgment was rendered. Upon such statement and request the court set aside the judgment entered; such action of the court being at the term in which the judgment was rendered.

On the 20th day of December, 1921, Mrs. Allison answered by general demurrer, general denial, and by her cross-action against the surety company and Collins, praying for the dissolution of the temporary injunction theretofore issued and for judgment for the title and possession of the money so taken from her.

Defendant Collins admitted that he took $794 from Mrs. Allison, as alleged by her, believing the same to be the property of the bank, which had been robbed by the defendant Absolon, and that he was holding the same subject to the orders of the court.

Thereafter and at the December term of said court, 1921, the cause was again called for trial, and a judgment by default was again, as was done at the former term, entered in favor of the plaintiff against defendant Fred Absolon for $3,500, from which no appeal has been made. On the 20th day of December, 1921, the cause as against Mrs. Allison and sheriff H. W. Collins was tried before the court without a jury, and judgment was rendered against Mrs. Allison in favor of the surety company for the sum of $794, and decreeing that Mrs. Allison take nothing by her cross-action, and that the $794 cash, in the possession of Sheriff Collins, be delivered to said Surety Company. From the judgment so rendered Mrs. Allison alone has appealed.

Appellant states in her brief that the findings of fact of the court give a clear idea of the facts involved, and that she makes no complaint against such findings, except such as are set forth in her first assignment of error. We shall therefore copy such findings in full as follows:

"I find that the plaintiff American Surety Company of New York, on the 27th day of January, A. D. 1921, executed to the Blue Ridge State Bank of Blue Ridge (now Hobby), Fort Bend county, Tex., bankers' burglary and robbery policy, H. O., No. 469180–A, policy No. ABC–30663, for a period to run from January 27, A. D. 1921, to January 27, A. D. 1922, for the sum of $5,000; that under said policy the plaintiff was obligated to pay to the Blue Bridge State Bank of Hobby, Tex., any loss sustained by it by reason of burglary, robbery, or theft;

that on the 15th day of February, A. D. 1921, defendant Fred Absolon robbed said Blue Ridge State Bank, and by force then and there appropriated $3,500 in cash and currency of money of the United States government; that soon after said robbery said defendant Fred Absolon left the town of Hobby and came to Houston. Tex., and procured a room in the Milby Hotel in said city; that during the time he resided in the town of Hobby he was living with his codefendant herein, Mrs. J. A. Allison, in her rooming house, in an adjoining room; that he was without employment and funds during such time; that about the time defendant Fred Absolon left the town of Hobby after said robbery, defendant Mrs. J. A. Allison also left said town of Hobby, and came to Houston and registered at the Milby Hotel therein.

"I find that the defendant Mrs. J. A. Allison was without funds and in stressful circumstances financially on the 14th day of February, A. D. 1921, and had been endeavoring to procure funds from several sources; and that she was found with the sum of $794 in currency, wrapped in a handkerchief and pinned in several places under the mattress of the bed being occupied by the said Mrs. J. A. Allison in said hotel; and that the pistol with which the robbery was perpetrated was found, in a bloody condition, in a hand bag in said room then occupied by the said Mrs. J. A. Allison in said Milby Hotel, which hand bag belonged to Fred Absolon; that both of said defendants were arrested in the Milby Hotel aforesaid a few days after the robbery, and as soon as they were located; that the defendant Fred Absolon was duly cited to appear and answer herein, but that he failed to do so, and that his deposition was not taken; that judgment by default was entered against him; that defendant Mrs. J. A. Allison had been very closely associated with defendant Fred Absolon; that she knew or had reason to believe that Fred Absolon robbed said Blue Ridge State Bank aforesaid; that the sum of money found in her room in said hotel was a part of the sum taken from said bank by Fred Absolon on the 15th day of February, A. D. 1921.

"I further find that the sum of $52 was taken from the possession of defendant Fred Absolon at the time he was arrested, but that the sum of $30 was returned to him prior to the institution of this suit; that said sum of money was also a part of the sum taken from said bank by Fred Absolon on the 15th day of February, A. D. 1921, aforesaid; that since said 15th day of February, A. D. 1921, on the —— day of ——, A. D. 1921, defendant Fred Absolon was convicted of murder in the district court of Fort Bend county, Tex., under an indictment charging him with the murder of R. L. Kirby, assistant cashier of the Blue Ridge State Bank, who was in charge of said bank at the time the robbery occurred.

"I further find that since the 15th day of February, A. D. 1921, plaintiff herein, American Surety Company of New York, has paid the loss sustained by the Blue Ridge State Bank aforesaid, and that the indemnity contract executed by plaintiff provides that the American Surety Company of New York shall be subrogated, in case of payment of any claim under said policy, to the extent of such payment, to all of the assured's right of recovery therefor

against persons, corporations, or estates; that the defendant H. W. Collins, as sheriff of Ft. Bend county, Tex., has possession of both of said sums of money."

We also copy the court's conclusion of law as follows:

"I conclude as a matter of law that the plaintiff American Surety Company of New York was liable to the Blue Ridge Bank of Hobby, Tex., for the sum of $3,500 by reason of the robbery of said bank by the defendant Fred Absolon, and that upon payment of such sum to the bank it was subrogated to ell of the rights of the bank, and was authorized to sue and recover from the defendants in accordance with the decree entered therein."

By her first assignment appellant insists that the court erred in his findings that the $794 found in possession of appellant and taken from her by Sheriff Collins was a part of the money taken from the bank by Fred Absolon on the 15th day of February, 1921.

The foregoing assignment is based upon the further contentions: First, that the officers who entered the room of appellant had no process for the arrest of appellant or to search her room, that such search was therefore unlawful and in violation of the guarantees of the state and federal Constitutions, and evidence obtained by them in making such search was not admissible over the objection of appellant, and if wrongfully admitted would in law constitute no competent or probative evidence against appellant; second, that if the testimony of said officers was admissible, still it was not of sufficient probative force to show that the $794 found in possession of and taken from appellant was any part of the money taken from the Blue Ridge State Bank, or to overcome the presumption of law arising from the fact of possession by appellant of such money that it belonged to her; and, third, since said money was found in the possession of appellant it should be presumed to belong to her, the evidence offered being insufficient to show that it came into her possession from Fred Absolon, or in any other illegal manner.

We think the evidence, including that of the witnesses Collins and Sammons, was clearly sufficient to support the finding of fact and conclusions of law of the court, and that such findings and conclusions support the judgment rendered. This being true, the only remaining question for our decision is: Was the testimony of the witnesses Collins and Sammons relative to the information they obtained when they entered and searched the room of appellant at the Milby Hotel admissible? That such testimony, if admissible, was pertinent and material to an important issue in the case is not and cannot seriously be questioned, and unless the information imparted by this testimony was rendered inadmissible because of the means by which it was obtained—that is, by the entry and search of appellant's room—it was clearly admissible. Without the testimony of these witnesses or one of them the judgment could not stand. We have, however, reached the conclusion that the testimony of these two witnesses was properly admitted.

It was shown that Fred Absolon, who robbed the Blue Ridge Bank, boarded with appellant at the time of such robbery; that they seemed to be very much attached one to the other; that after such robbery both left Blue Ridge and both put up at the Milby Hotel at Houston, and that when appellant left Blue Ridge she took the effects of Absolon with her to said hotel; that she had the pistol, grip, and other effects of Absolon in her room at the hotel when the witnesses entered and searched her room, and that she had $794 in money at the time hidden under the mattress of her bed. It was shown by strong circumstances, and by her statements made to several parties just before she left Blue Ridge only a day or two after the robbery of the bank, that she had practically no money, and that she had to sell her furniture to pay rent due by her.

It was shown that Collins and Sammons were peace officers of Fort Bend county, Tex., charged by law with the duty to attempt to discover the perpetrators of the murder and robbery which had recently occurred at Blue Ridge, and that in performance of such duty they went to the room of appellant, and by her permission entered and searched same.

It is shown by the statement of facts that the witness Doc Sammons was called as a witness by the appellee plaintiff in the lower court, and that he testified that he went to the room occupied by appellant on the third floor of the Milby Hotel, accompanied by Sheriff Collins, Bob Bassett, and Lee Sparks; that they knocked on her door and told her they were officers and wanted to talk to her; that they entered her room with her permission, and would not have done so without her permission; that they had no search warrant nor any warrant for the arrest of appellant; that they made a search of appellant's room by her permission; that they found $794 in appellant's room, and Sheriff Collins took possession of same. H. W. Collins, sheriff, was called as a witness by appellant, and on direct examination by her counsel testified that he, Doc Sammons, Bob Bassett, and Lee Sparks went to the room of appellant, and that he knocked at her door, and, after telling her who they were, he told her that he wanted to talk to her about the bank robbery at Blue Ridge; that she said, "all right; wait until I dress;" that she closed the door and dressed, and then opened the door and said, "come in;" that he and those with him went in the room, and he asked where her grips were, and she said,

"I have got them here;" that she then got the grips, and said that all her things were in them; that he then asked her where Fred Absolon was, and she said she did not know; that she had brought his grips with her from Blue Ridge and had them there in her room; that he told her he would like to look through Fred's grips and she said, "All right; you are welcome;" and pointed them out to him; that she then opened Fred's grips and took out a pistol and said that it was Fred's; that he found $94 in her purse and $700 under the head of her bed; that all his money was composed of bills of various denominations from $1 to $20, all mixed up; that he took charge of said money, and had the same in the bank; that in a short time he found Fred Absolon in a room of the Milby Hotel, and he then took both Absolon and appellant with him.

There was no evidence remotely tending to show that either the Blue Ridge Bank or the appellee or any one for them, had anything to do with the search or seizure detailed by Collins and Sammons, or that they knew of any intention on the part of said officers to make any such search and seizure.

After the testimony of Sammons had been admitted without objection, as shown by appellant's bill of exception, and after appellant herself had introduced the testimony of H. W. Collins, appellant asked the court to exclude the testimony of said witnesses upon the grounds that the information testified to by them relative to finding the money in appellant's room was obtained by them in violation of the state and federal Constitutions relative to search and seizure, etc., and that providing that no person shall be compelled to give evidence against himself.

[1, 2] As we have already said, we think the evidence was clearly admissible: First, because there was evidence to show that the officers entered and searched appellant's room by her permission, and that they would not have done so without her consent; second, if it should be conceded that the entry and search of appellant's room was in violation of law and wrong, still such wrongful acts cannot be charged to appellee, as such entry and search, and the seizure of the money involved, was not brought about by appellee the American Surety Company.

[3] Again, if it be conceded that the acts of Sammons and Collins in entering and searching appellant's room were in violation of the constitutional rights of appellant, that appellee inspired such acts, and that the information given by said officers to the court was gained by reason of such acts, still we think the testimony of these witnesses in behalf of appellee was admissible. The courts do not concern themselves with the method by which a party to a civil suit secures evidence pertinent and material to the issues involved, and which he adduces in support of his contention, and hence evidence which is otherwise admissible may not be excluded because it has been illegally and wrongfully obtained. 22 Corpus Juris, § 158, 10 R. C. L. §§ 97, 98, pp. 931, 932. The question as to whether in a criminal prosecution the accused may be compelled to furnish evidence against herself is not involved in this inquiry. Having reached the conclusion that the evidence objected to was properly admitted and considered, and the same, together with other evidence adduced, was sufficient to support the judgment, it becomes our duty to affirm such judgment; and it is so ordered.

[4] Having disposed of the assignments and contentions of appellant, we now come to consider the cross-assignment of appellee. Appellee substantially contends that the trial court was not authorized under the law to grant a new trial, although he may have had jurisdiction so to do, in the absence of a written motion for new trial, verified as the law requires, showing a legal or equitable excuse for nonappearance, and also showing a meritorious defense to the suit; and that such action was a prejudicial and erroneous abuse of authority, there being no room for the exercise of discretion in view of the facts and circumstances shown; that the order of said court granting appellant a new trial was a nullity and did not have effect to set aside and vacate the judgment, and that, as such judgment was not appealed from, it remains a valid and subsisting judgment, which may be enforced by proper process. We are of opinion that under the facts shown, set out herein, the court had the authority to set aside the judgment, first rendered, of his own motion, regardless of the fact that appellant had made a verbal request only for a new trial. We therefore overrule appellee's cross-assignment.

The judgment is in all things affirmed.

Affirmed.