**Dana Lynn COLLINS, Appellant,**

v.

**Glenn Samuel COLLINS, III, Appellee.**

No. 01–91–00782–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 29, 1995.

Rehearing Overruled July 27, 1995 and Aug. 31, 1995.

Maurice Bresenhan, Jr., Houston, for appellant.

J. Ken Nunley, Thomas Black, San Antonio, for appellee.

### EN BANC OPINION ON MOTION FOR REHEARING

O'CONNOR, Justice.

Appellee filed a motion requesting this Court to hear this case en banc. On rehearing, the Court sitting en banc grants his motion, withdraws the panel opinion, and issues this in its stead. We reverse and remand for a new trial on the issues of custody, the division of property, the assessment of statutory damages for violations of the federal and state wiretap statutes, and attorney fees. We affirm the granting of the divorce and the tort judgment of $15,000.

## Fact Summary

This is an appeal from a final decree of divorce between appellant, Dana Lynn Collins (wife), and appellee, Glenn Samuel Collins (husband). The entire 19–year marriage of this couple was characterized by spousal abuse, affairs by both parties, separations, and reconciliations. The couple married when the wife was 16 years old. She worked while her husband attended college acquiring masters and doctoral degrees. After college, the husband developed a very successful business. They were granted a divorce on December 13, 1990.

In answer to 11 questions, the jury recommended appointment of the husband as sole managing conservator of the minor child; valued a group of businesses at $2,189,482.90, one-half of which was the marital community estate's major asset; found for the wife in a tort cause of action against the husband based on an illegal wiretap of her telephone; found the husband had "intercepted" the wife's telephonic communications; and determined the amount of the wife's attorney fees.

In the judgment, the trial court:

(1) appointed the husband as sole managing conservator of the minor child;

(2) appointed the wife as sole possessory conservator of the minor child;

(3) awarded the wife a $15,000 judgment on her tort claim for spousal abuse;

(4) awarded the wife, for her community interest in a group of businesses, owelty in the sum of $342,000, at six percent interest, to be paid in monthly installments of $4,000, secured by one-half of the husband's shares in CIC Agency, Inc., one of the businesses; and

(5) ordered each party to pay his or her respective attorney fees and court costs.

The wife appeals the jury's valuation of the community property, the custody determination of the couple's minor child, the admission into evidence of tapes from the illegal wiretapping, the denial of statutory damages for illegal wiretapping, the denial of attorney fees, the equitable division of the parties' community estate, the possession order, and the owelty award.

## A.

## Violation of the Wiretap Statutes [1]

In point of error 3(B)–(F), the wife contends she is entitled to statutory damages because of the illegal wiretaps.

The wife contends that certain tape recordings were obtained by the husband in violation of 18 U.S.C. §§ 2510–2521 ("the federal wiretap statute") and TEX.CIV.PRAC. & REM. CODE §§ 123.001–123.004 ("the state wiretap statute"). The husband argues that spouses are exempt from the wiretap prohibitions in both statutes. He argues he had a right to tape the conversations, and he had the right to use the tapes in the divorce proceeding.

■ The federal wiretap statute prohibits the interception and use of illegally intercepted communications. 18 U.S.C. §§ 2510–2521. Under section 2520(a), any person whose communication is intercepted, disclosed, or intentionally used in violation of the statute, is entitled to recover in a civil action.

■ The state wiretap statute prohibits the use of the illegally intercepted communication. Section 123.004 of the Civil Practice and Remedies Code states that a party whose communication is intercepted may obtain an injunction prohibiting the "divulgence or use of information obtained by an interception." The illegal interception of a conversation and the use of the conversation is a second degree felony. TEX.PENAL CODE § 16.02(f).

Two Texas courts of appeals have held that the interception of a telephone conversation by a spouse is illegal. *Kent v. State,* 809 S.W.2d 664, 668 (Tex.App.—Amarillo 1991, pet. ref'd) (defendant violated former Tex.Penal Code § 16.02 by placing a wiretap on the wife's telephone); *Turner v. PV Int'l Corp.,* 765 S.W.2d 455, 469–71 (Tex.App.—Dallas

---

1. Justice Mirabal dissents from this part of the opinion without opinion.

1988), *writ denied per curiam,* 778 S.W.2d 865, 866 (Tex.1989).[2]

■ Neither the state nor the federal wiretap statutes contain any exception for wiretaps between spouses. *See Kent,* 809 S.W.2d at 668 (Texas statute); *Kempf v. Kempf,* 868 F.2d 970, 973 (8th Cir.1989) (federal statute). In *United States v. Giordano,* 416 U.S. 505, 514, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974), the Court said:

> [T]he purpose of the legislation [18 U.S.C. § 2510] was effectively to prohibit ... *all* interceptions of oral and wire communications, except those specifically provided for in the Act....

(Emphasis added.)

■ Texas courts have long recognized both a common law and a constitutional right of privacy. *State Employees Union v. Dep't of Mental Health,* 746 S.W.2d 203, 205 (Tex. 1987) (the right of privacy is implicit in the Texas Constitution); *Billings v. Atkinson,* 489 S.W.2d 858, 860 (Tex.1973) (a homeowner has a cause of action for illegal wiretap of residence based on the common-law right of privacy). Nothing in the Texas Constitution or our common law suggests that the right of privacy is limited to unmarried individuals.

Only two federal courts of appeals have held the federal wiretap statute exempts spouses from its prohibitions. *Anonymous v. Anonymous,* 558 F.2d 677, 679 (2d Cir. 1977); *Simpson v. Simpson,* 490 F.2d 803, 809 (5th Cir.1974). Those opinions have been widely criticized. *See, e.g., Platt v. Platt,* 951 F.2d 159, 160 (8th Cir.1989); *Heggy v. Heggy,* 944 F.2d 1537, 1539 (10th Cir. 1991); *Kempf,* 868 F.2d at 972–73; *Pritchard v. Pritchard,* 732 F.2d 372, 374 (4th Cir. 1984); *United States v. Jones,* 542 F.2d 661, 667 (6th Cir.1976); *Walker v. Carter,* 820 F.Supp. 1095, 1097 (C.D.Ill.1993); *Nations v. Nations,* 670 F.Supp. 1432, 1434–35 (W.D.Ark.1987); *Flynn v. Flynn,* 560 F.Supp. 922, 924–25 (N.D.Ohio 1983); *Heyman v. Heyman,* 548 F.Supp. 1041, 1045–47 (N.D.Ill.1982); *Gill v. Willer,* 482 F.Supp. 776, 778 (W.D.N.Y.1980); *Kratz v. Kratz,* 477

F.Supp. 463, 467–72 (E.D.Pa.1979); Comment, *Interspousal Electronic Surveillance Immunity,* 7 U. OF TOL.L.REV. 185, 185–212 (1975).

■ A court may consider the legislative history of a statute without making a finding that the statute is ambiguous. TEX.GOV'T CODE § 311.023. The legislative history of the federal wiretap statute indicates that Congress anticipated it would restrict the use of wiretap evidence in divorce cases. Senator Long, chair of the subcommittee on Administrative Practice and Procedure of the Senate Judiciary Committee, stated that the "three major areas in which private electronic surveillance was widespread were (1) industrial, (2) divorce cases, and (3) politics." *Kempf,* 868 F.2d at 973. Senator Hruska, a co-sponsor of the bill, commenting on the scope of the statute, noted that "[a] broad prohibition is imposed on private use of electronic surveillance, particularly in domestic relations and industrial espionage situations." S.Rep. No. 1097, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Admin.News 2112, 2274; *Kempf,* 868 F.2d at 973.

■ A majority of the full court sitting en banc holds that spouses, as any other persons, have rights of privacy under both wiretap statutes. We sustain point of error 3(B)– (F).

**B.**

**The Wiretap Evidence at Trial**

In point of error 2(A), the wife contends the court erred in refusing to grant her motion in limine made to exclude the illegally obtained tape recordings. In point of error 2(B), the wife contends the court erred in making the custody determination based on illegally obtained wiretap evidence.

Three separate instances of wiretap recordings were considered at trial. The first, referred to as the "Van Brocklin tape," involved one conversation between the wife and Van Brocklin, her paramour. The evidence

---

**2.** We recognize the Texas Supreme Court, in denying writ, noted that the denial was not to be construed as approving the holding of the court of appeals on the admissibility of the tape recorded telephone conversations. *PV Int'l Corp. v. Turner,* 778 S.W.2d 865, 866 (Tex.1989).

shows that the husband installed a tape-recording device in the Collins' home in October of 1987 to record the wife's telephone conversations.

The second instance, referred to as the "post-order tapes," involved a conversation taped after March 22, 1990, when the husband was appointed sole temporary managing conservator of their minor child. In the "post-order" tapes, the husband recorded telephone conversations between the wife and the minor child. The husband used these recordings to impeach the wife during the trial on the issue of custody. The husband also gave the tapes to Dr. Hughes, the expert for the ad litem who testified that the husband should get custody of their child.

The third instance involved an allegation by the wife that the husband listened to her telephone calls with her lawyers. She decided he had listened to conversations with her lawyer because the husband preempted her filing of the divorce. At trial, the husband attempted to explain how he knew she was talking to a lawyer—that he saw the telephone bill. The calls to the lawyer were local, however, not long-distance calls, and the telephone bills showed only long-distance numbers.

### 1. Waiver—Van Brocklin Tape

The husband contends the wife waived her objections to the husband's testimony about the contents of the Van Brocklin tape because she only made a motion in limine to exclude it. The Court agrees. The trial court's ruling on a motion in limine does not preserve error. If the evidence is offered at trial, the party who wants to exclude it must object when it is offered. *Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex.1963); *Sims v. State*, 816 S.W.2d 502, 504 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

We hold the wife waived error regarding the husband's testimony about the Van Brocklin tape.

We overrule point of error 2(A).

**3.** On one of the post-order tapes, the wife asked the son if the conversation was being recorded;

### 2. Waiver—Post–Order Tapes

When the husband offered the post-order tapes (the wife's conversations with her son) into evidence to impeach the wife, the wife's attorney objected. The court overruled the objections and permitted the jury to hear a transcript of the tapes. Later, when Dr. Hughes began to testify about the tapes, the wife's attorney again objected, arguing that the taped evidence could not be considered for any purpose. The court again overruled the objection. We hold the wife preserved her objection to the admission of the post-order tapes.

On appeal, the husband argues that because the wife suspected he might tape her conversations with their child, she waived her objections. We disagree. The state wiretap statute makes it illegal to tape a conversation "without the consent" of the person being recorded. Tex.Civ.Prac. & Rem.Code § 123.001(2). The wife, who had the right to talk with their child, did not consent to be taped by speaking with the child over the telephone.[3] Her only option was not to talk with their child over the telephone. This Hobson's choice was not a waiver of objections or a consent to recording. In a case similar to this, a husband sued his former wife for recording his conversations with their child. *Platt*, 951 F.2d at 160. The wife argued that because she was the guardian of the child, she could tape the child's telephone conversations with the child's father. The Eighth Circuit held the wife was not immune from suit for the recording under the federal wiretap statute. *Id.* at 161.

We hold the wife did not waive her objections to the post-order taping of her conversations with their child.

### 3. Post–Order Tapes and Custody

Even though the post-order tapes were illegally obtained under the state and federal wiretap statutes, we must still determine if they were admissible at trial on the issue of custody.

he answered that it was not.

■ Illegally obtained evidence has been held admissible in civil lawsuits. *See e.g., State v. Taylor,* 721 S.W.2d 541, 551 (Tex. App.—Tyler 1986, writ ref'd n.r.e.). In *Allison v. American Sur. Co.,* 248 S.W. 829, 832 (Tex.App.—Galveston 1923, no writ), we stated:

The courts do not concern themselves with the method by which a party to a civil suit secures evidence pertinent and material to the issues involved ... and hence evidence which is otherwise admissible may not be excluded because it has been illegally and wrongfully obtained.

*See also Sims v. Cosden Oil & Chem. Co.,* 663 S.W.2d 70, 73 (Tex.App.—Eastland 1983, writ ref'd n.r.e.).

■ The admissibility of evidence illegally obtained is tempered by TEX.R.CIV.EVID. 402, which provides, in part, that "[a]ll relevant evidence is admissible, except as otherwise provided ... by statute." Consequently, before the tapes can be held to be inadmissible, the wife must show their exclusion was required under either the federal or state statute.

■ Section 2511(1) of the federal wiretap statute prohibits the use or disclosure of communications by any person except as provided by statute. *Gelbard v. United States,* 408 U.S. 41, 51–52, 92 S.Ct. 2357, 2363, 33 L.Ed.2d 179 (1972) (witness could not be forced to disclose testimony from illegal wiretap to grand jury). Section 123.002 of the state wiretap statute states that a party has a cause of action against any person who "divulges information" that was obtained by an illegal wiretap. TEX.CIV.PRAC. & REM.CODE § 123.002. Section 123.004 states that a party whose communication is intercepted may ask the court for an injunction prohibiting the "divulgence or use of information obtained by an interception." TEX. CIV.PRAC. & REM.CODE § 123.004. Although the Texas wiretap statute does not specifically provide for the exclusion of illegally obtained "communications," the provisions for a cause of action for divulging wiretap information and the injunctive remedies provided in section 123.004 are sufficient to rebut the

presumption of admissibility under rule 402. Because the tapes were illegally obtained under the federal and state statutes, the trial court should not have admitted them into evidence on the issue of custody.

The tape-recorded conversations were not admissible because the criminal statute dealing with the use of the intercepted communications criminalizes their dissemination, and the civil statute provides a method to prevent dissemination. To permit such evidence to be introduced at trial when it is illegal to disseminate it would make the court a partner to the illegal conduct the statute seeks to proscribe. *Gelbard,* 408 U.S. at 51, 92 S.Ct. at 2362–63; *Turner,* 765 S.W.2d at 470.

We hold the illegally obtained tapes were not admissible and should not have been given to the expert for her to use in forming her opinion on the issue of custody.

We sustain point of error 2(B), and reverse and remand the issue of custody for retrial.

## C.

### Exclusion of Valuation Testimony [4]

In point of error 1(A)–(B), the wife argues that the trial court erred in permitting the husband and his partner, David Hickson, to testify as experts about the value of the corporation because they were not designated as experts and the substance of their testimony was not produced before trial.

The wife filed a motion in limine to prevent her husband from testifying as an expert in determining the value of the corporations. The court granted the motion, but when the husband began to testify about value, the court permitted him to testify, over the wife's objections. The wife argues that the trial court erred in permitting the husband and Hickson to testify about the value of CIC and Warantek.

■ When a party is asked for information about expert witnesses who will testify at trial (names and substance of testimony), the information must be disclosed. TEX. R.CIV.P. 166b(2)(e)(1); *Exxon Corp. v. West Texas Gathering Co.,* 868 S.W.2d 299, 304

4. Justice Hedges, joined by Justice Cohen, dissents from this part of the opinion.

(Tex.1993). If not disclosed, the expert cannot testify; the sanction is automatic. TEX. R.CIV.P. 215(5); *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 914 (Tex.1992); *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 297 (Tex.1986). Although the husband and Hickson were listed as fact witnesses, they were not listed as expert witnesses. Hence, the trial court has no discretion to admit testimony of the undesignated witness. *Alvarado,* 830 S.W.2d at 914.

The only exception to the automatic exclusion of the undesignated expert witnesses is if the party proves "good cause" for failing to designate. *Henry S. Miller Co. v. Bynum,* 836 S.W.2d 160, 162 (Tex.1992). The trial court has the discretion to determine whether the offering party met its burden of showing good cause. *Aluminum Co. of Am. v. Bullock,* 870 S.W.2d 2, 3 (Tex.1994). The question before us is whether the trial court's implied finding of good cause was made without reference to any guiding rules or principles, and was an abuse of discretion. *See Morrow,* 714 S.W.2d at 298. To establish a clear abuse of discretion, the complaining party must show the trial court's action was arbitrary or unreasonable in light of all the circumstances of the particular case. *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984).

When the husband attempted to testify about value of the corporation, the wife objected on the ground that neither the husband nor Hickson had been designated as expert witnesses in answers to interrogatories, and the husband did not produce any information about the substance of their testimony on value. The wife also objected

because she had asked both the husband and Hickson during their depositions if they planned to testify about value, and both had said they would not. The husband's lawyer even assured the wife's lawyer that the husband would not testify about value, and if he changed his mind, he would inform them ahead of time.[5] In response to her objection at trial, the husband argued that he and Hickson should be permitted to testify as lay witnesses about value; that it was not necessary for either of them to be listed as experts or to produce the substance of their testimony before trial.[6] Without stating any reason, the trial court overruled the wife's objection and permitted the husband and Hickson to express their opinions about value of the corporations. The husband's evidence regarding value of the corporations indicated a much lower value than that offered by the wife's experts.

One of the most important issues in this divorce, as in many divorces, was the value of the community property. The major assets of this community estate were two corporations which were completely controlled by the husband and his partner. The discovery rules would mean nothing if, in the middle of trial, a party could formulate an opinion on value when he earlier said he had no such opinion.

Rule 166b(2)(e) requires the disclosure of the identity of a party's trial experts and the substance of their testimony. *Aluminum Co.,* 870 S.W.2d at 4. When a response to discovery is misleading, even though it was initially correct, rule 166b(6)(a)(2)[7] requires the party to supple-

---

5. During the husband's deposition, he was asked if he was planning on expressing an opinion at trial about CIC stock. He said "no." His lawyer volunteered the following: "Let me answer that. I don't anticipate him expressing an opinion. He has done no analysis. I have asked him to do no analysis. He has not talked to all of the people I have talked to. If that changes in any way I will notify you in ample time to re-ask him. But, at this point I do not anticipate asking him that."

6. The husband's position at trial, that he was not an expert and could testify without notifying the wife before trial, is at odds with his lawyer's statement during deposition, reproduced above.

7. Rule 166b(6) provides in part:

   *6. Duty to Supplement.* A party who has responded to a request for discovery that was correct and complete when made is under no duty to supplement his response to include information thereafter acquired, except the following shall be supplemented not less than thirty days prior to the beginning of trial unless the court finds that a good cause exists for permitting or requiring later supplementation.

   a. A party is under a duty to reasonably supplement his response if he obtains information upon the basis of which:

   . . . .

   (2) he knows that the response though correct and complete when made is no longer true and

ment its responses at least 30 days before trial. When an expert changes his or her opinion about a material issue after being deposed, rule 166b(6)(b) [8] requires the party to supplement its response to discovery and inform the other party about the change. *Aluminum Co.*, 870 S.W.2d at 4; *Exxon Corp.*, 868 S.W.2d at 304. A last minute, material alteration in the expert's testimony is just as damaging as the complete failure to list an expert. *Exxon Corp.*, 868 S.W.2d at 305.

In *Aluminum Company*, the plaintiff's expert testified on deposition that Alcoa was not consciously indifferent to its employee's safety. At trial, the same expert testified that Alcoa was grossly negligent. *Aluminum Co.*, 870 S.W.2d at 3. The expert said she reached this conclusion after reviewing additional material following her deposition. The Texas Supreme Court held the plaintiff had a duty, imposed by rule 166b(2)(e), to supplement her responses to discovery when her expert changed her opinion about Alcoa's negligence. *Id.* at 4; *see also Farm Serv., Inc. v. Gonzales*, 756 S.W.2d 747, 750 (Tex. App.—Corpus Christi 1988, writ denied) (witness who changed opinion after deposition should have been excluded).

In *Exxon Corporation*, the Supreme Court held that a party who has disclosed the substance of its expert's testimony is not required in a supplement to discovery to disclose a minor refinement of the expert's testi-

mony. *Exxon Corp.*, 868 S.W.2d at 304. The court noted that the purpose of the rule requiring disclosure of the substance of the expert's testimony is to give the opposing party sufficient information about the expert's opinion to permit the party to prepare for cross-examination of the expert and prepare rebuttal evidence from their own expert. *Id.*

■ Here, the husband and Hickson testified under oath at their depositions that neither had an opinion about the value of the corporations and neither would offer an opinion at trial.[9] The husband's attorney assured the wife's attorney that he would notify him if the husband and Hickson changed their mind. They did not notify the wife's attorney of any change. The wife's attorney had no opportunity to prepare for the cross-examination of the husband and Hickson on the issue of valuation, or to prepare rebuttal testimony from the wife's expert.

Although some courts have permitted a party to testify even though the party was not designated as a witness, in none of those cases did the court permit the party to give expert testimony. For example, in *Henry S. Miller*, 836 S.W.2d at 161, the trial court permitted Bynum, who was not designated as a witness, to testify as a fact witness but not as an expert.[10]

■ The husband claims he did not give expert testimony, but that he only gave lay

---

complete and the circumstances are such that failure to amend the answer is in substance misleading; or

    b. If the party expects to call an expert witness when the identity or the subject matter of such expert witness' testimony has not been previously disclosed in response to an *appropriate inquiry* directly addressed to these matters, such response must be supplemented to include the name, address and telephone number of the expert witness and the substance of the testimony concerning which the expert witness is expected to testify, as soon as is practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court.
(Emphasis added.)

8. See footnote 7, above.

9. The wife sent the husband interrogatories requesting information about experts. Additionally, at the depositions of the husband and Hickson, the wife's attorney made another "appropriate inquiry" regarding supplementation of the information regarding possible expert witnesses

and their testimony. Rule 166b(6)(b) states that a party is under a duty to supplement information not previously disclosed in response to an "appropriate inquiry." It was appropriate for the wife's attorney to quiz the husband and Hickson at deposition whether they would offer expert opinions at trial. *See Foster v. Cunningham*, 825 S.W.2d 806, 808 (Tex.App.—Fort Worth 1992, writ denied) (a party may make an appropriate inquiry during deposition for information about witnesses).

10. The dissent insists that the husband and the partner could testify, even though not properly listed as witnesses, because they were the owners of the corporation. The dissent confuses the substantive law that governs the testimony of experts (who has the ability to testify as an expert) with the procedural law that controls the trial procedure (who was properly identified as a witness). If we followed the dissent's logic, any person who had an ownership interest in property could testify about value of property, generally a matter left to an expert, even though not desig-

testimony about the value of his own company. The wife's attorney asked the husband in his deposition if he planned to provide *any* evidence regarding value, either personal opinion or expert opinion. He said he did not. The husband did not show good cause for failing to inform the wife before trial that he and Hickson would testify about value of the corporations.[11]

■ If the trial court admits testimony of an undesignated witness without a showing of good cause, to obtain reversal, the party objecting to the evidence must show harm. *Alvarado*, 830 S.W.2d at 917. If the undesignated witness testified about a material, disputed allegation, the appellate court will reverse. *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex.1989). If the undesignated witness testified about matters that were merely cumulative of other evidence, the appellate court will affirm, holding the error was harmless. *Id.*

■ The husband and Hickson testified that the value of the corporations was 2.2 million dollars; the wife's experts testified the value was between $17 and $18 million; the jury found the value was $2,189,482.90. We find the husband and Hickson testified about a material, disputed allegation, and the evidence was not merely cumulative.[12]

A majority of the court sitting en banc sustains the wife's point of error one and reverses and remands the case to the trial court for a new trial on the value of the property and the division of the community estate.

We sustain point of error 1(A)–(B).

## D.

### Jury instruction

In point of error 1(C), the wife argues that the italicized language in the instruction be-

---

nated in response to a question asking for the names of experts who were going to testify. The dissent insists that the husband and the partner could testify as lay witnesses about valuation, even though they were directly asked if they were going to give any opinion about value (even a personal one), and they said no.

11. The dissent professes to know of no authority that would require the husband to supplement the deposition testimony that he and Hickson gave during their depositions that misled the wife. Rule 166b(6)(b) is the authority. It provides that a party has a duty to supplement information given "in response to an appropriate inquiry directly addressed to these matters." In this case, on deposition, the husband, Hickson, and the husband's lawyer stated, in response to an "appropriate inquiry," that they would not testify about value at trial.

The dissent's position, that a party is not required to supplement deposition testimony, would cause havoc at trial—a witness could give one opinion on deposition, change his or her mind before trial, and testify at trial to the reverse. The Texas Supreme Court has addressed this very issue in *Aluminum Company*, where it said, "When Laux's [the deposed expert] opinion concerning Alcoa's negligence changed due to the review of additional facts, the Bullocks then had a duty to supplement their discovery responses to disclose the material change." 870 S.W.2d at 4. When the husband and Hickson testified at trial they had an opinion on value, it was a material change from their testimony on deposition when they said did not have an opinion on value, would not offer such an opinion at

trial, and if they changed their mind, they would let the wife know. *See also Foster*, 825 S.W.2d at 808 (party could make request for witness list during a deposition); *Farm Serv., Inc.*, 756 S.W.2d at 750 (witness, who changed opinion after deposition, should have been excluded at trial).

12. The dissent argues that the wife's remedy was to cross-examine and to impeach the husband and Hickson. Contrary to the dissent's argument, the ability to cross-examine and possibly impeach the witness who was not identified is not "good cause" for permitting the witness to testify. This is the holding of *E.F. Hutton & Co. v. Youngblood*, 741 S.W.2d 363, 364 (Tex.1987). The *purpose* of requiring disclosure of the expert's testimony before trial is to give the opposing party sufficient information about the expert's opinion to permit the party to prepare to cross-examine the expert and prepare rebuttal evidence from another expert. *Exxon Corp.*, 868 S.W.2d at 304. The purpose of the rule would be subverted if the only remedy for a violation was to attempt to cross-examine or impeach without the benefit of preparation and to present the case without rebuttal evidence. We recognize that in dicta in *Ramsey v. Lucky Stores, Inc.*, 853 S.W.2d 623, 630 n. 9 (Tex.App.—Houston [1st Dist.] 1993, writ denied), we said a witness who testifies differently at trial is subject to impeachment. We did not mean to suggest that impeachment was a remedy for failure to exclude a witness, as is suggested by the dissent. That would be contrary to the Supreme Court's holding in *E.F. Hutton*, one of the early cases involving the failure to identify a witness. 741 S.W.2d at 364.

low destroyed the value of the three non-competition agreements. In question three, inquiring as to the value of CIC and Warantek, the jury was instructed:

The "present value" of an asset is its market value unless it has no market value.

"Market value" is the price the asset will bring when it is offered for sale by one who desires to sell, but is not obligated to sell and is bought by one who desires to buy, but is under no obligation of buying.

If an asset has no market value, its present value is the value of its ownership as determined from the evidence.

You are to determine the present value of the ownership interest in the business *as if the party participating in it will no longer continue to do so and will be free to compete directly with it.*

(Emphasis added.) This instruction was taken from 5 Tex.Pattern Jury Charges, PJC 203 (1989).

The wife contends the three non-competition agreements were assets of CIC and the husband argues they were not. The first non-competition agreement is found in the "Agreement to Incorporate Partnership," executed when the husband and Hickson formed CIC. Parts of that agreement are reproduced below:

The parties hereto have caused the corporation to be formed.

. . . .

Immediately upon incorporation, the parties hereto, as copartners, shall sell and transfer to the corporation all assets and business of Creative Insurance Concepts, their partnership, including [list of assets, including leasehold interest] and shall join in execution of appropriate legal documents to accomplish the sale and transfer.

. . . .

The parties hereto shall cause the corporation to assume all the liabilities of their partnership. . . .

. . . .

Each of the parties hereto agrees that for a period of two (2) years after he ceases to be an officer or director of the corporation he will not engage in the same or any similar kind of business in Brazos County or within a distance of fifty (50) miles of the boundaries thereof.

The agreement was signed by both the husband and Hickson. By this agreement, the husband and Hickson transferred all their partnership assets and debt to the newly formed corporation. One of the assets they transferred was their promise not to compete with the corporation. The agreement forming CIC was a corporate asset. The value of this agreement, as all other assets they transferred to the newly formed corporation, attached to CIC. By their agreement to incorporate, the husband and Hickson agreed not to compete with the corporation.

The second non-competition agreement was an unexecuted "Non–Competition and Confidentiality Agreement" in the corporate minutes of CIC. CIC's minutes state that the form of the agreement was reviewed, approved and was to be signed by all but two producers. The unexecuted agreement and the minutes confirm that both the husband and Hickson were required to execute the non-competition agreement.

The third non-competition agreement was the "Exclusive Producer Agreement" between CIC and its underwriter, AIG, which set up a five-year (1989–1994), exclusive relationship between the two entities. This agreement bound CIC and its employees to deal exclusively with AIG. This agreement did not limit the husband, except as an employee of CIC in its relationship to AIG. This agreement was not relevant to the jury issue.

█ Because CIC had an enforceable non-competition agreement signed by both the husband and Hickson, the jury should not have been instructed to disregard it as having no value to CIC. The trial court erred in its instructions to jury question number three.

We sustain point of error 1(C).

## E.

### Statute of limitations [13]

In point of error 3(A), the wife contends the state wiretap statute, which does not contain a statute of limitations, is governed by the residual limitations provision in TEX. CIV.PRAC. & REM.CODE § 16.051, which is four years.[14]

Because the state wiretap statute has no stated statute of limitations, we must look to other authority to determine which to use. The wife argues that the general residual limitations period contained in section 16.051 of the Civil Practice and Remedies Code governs. That section provides "[e]very action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues." TEX.CIV.PRAC. & REM.CODE § 16.051.

■■■ We disagree with the wife. An action under the state wiretap statute sounds in tort and is controlled by a two-year statute of limitations. This Court has held that "[i]nvasion of privacy is governed also by the two-year statute of limitations." *Stevenson v. Koutzarov,* 795 S.W.2d 313, 319 (Tex. App.—Houston [1st Dist.] 1990, writ denied). Violation of the state wiretap statute is clearly an invasion of privacy.

A majority of the court sitting en banc overrules point of error 3(A).

## F.

### The Terms of the Judgment

In point of error 6(A)–(C), the wife contends the trial court's judgment is erroneous for three reasons: (A) the judgment does not equitably divide the parties' community estate; (B) the possession order in the judgment does not conform to the Texas Family Code and the trial court refused to file findings of fact and conclusions of law; (C) the judgment does not properly secure her owel-

ty award because it is not a judgment, it is not enforceable as a judgment, and it does not bear the proper rate of interest.

■■■ We now address point of error 6(C), the wife's arguments regarding the owelty award. The wife argues the trial court abused its discretion in setting an interest rate of six percent for the payout period. She argues that under TEX.REV.CIV.STAT. art. 5069–1.05 §§ 2, 3, the court must set an interest rate of at least 10 percent per year. We agree. In the event the trial court sets a payout schedule, we direct the court to set an interest rate of not less than 10 percent per year, compounded annually, as required by article 5069–1.05 §§ 2, 3. *See El Universal, Compania Periodistica Nacional v. Phoenician Imports, Inc.,* 802 S.W.2d 799, 804 (Tex. App.—Corpus Christi 1990, writ denied) (appellate court reformed the judgment to include post-judgment interest in accordance with the statute).

■■■ The wife argues that the payout period in the judgment of almost 12 years is unjust. In *Hanson v. Hanson,* 672 S.W.2d 274, 279 (Tex.App.—Houston [14th Dist.] 1984, writ dism'd), the court held the trial court abused its discretion by establishing a payout schedule of six years. *Id.* The husband should be directed to pay the judgment within the shortest period in which he is capable so that the wife is not deprived of the right to control her full share of the estate. *Id.* On this record, there is no evidence to support the need for a 12–year pay-out or the husband's capacity for paying in a shorter period of time. We assume, after the retrial of this case, the court will sign a judgment that will make appropriate provisions that are supported by the record.

The wife also argues that the money judgment for her share of community property is only secured by corporate stock of CIC. The wife argues that if the husband defaults in the payment of her award, she will be forced to file another lawsuit to collect her commu-

---

**13.** Justice Hutson–Dunn, joined by Chief Justice Oliver–Parrott, dissents from this part of the opinion.

**14.** Section 16.051, "Residual Limitations Period," provides:

> Every action for which there is no *express* limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues.
> (Emphasis added.)

nity property. In *Hanson*, the court said that a money judgment can be used to equalize an award when partition of the community estate would result in no value to the wife. *Hanson*, 672 S.W.2d at 278. In that case, the court noted it was not possible to partition the husband's medical practice or his retirement fund, and the couple's home was heavily mortgaged. *Id.* Here, we do not know if the court could have granted the wife a mortgage on the house awarded to the husband or if the court could have awarded the wife some of her share of community property from the husband's retirement accounts. On remand we assume those issues will be fully developed.

We overrule point of error 6(C).

## G.

### Other Issues

Because we remand this cause to the trial court, we decline to address the remaining issues.

DUGGAN [15] and HEDGES, JJ., sitting on panel submission.

HEDGES, J., joined by COHEN, J., filed a dissenting and concurring opinion from part C of the opinion. On panel submission, DUGGAN, J., voted in favor of the position espoused in Justice HEDGES' dissent.

HUTSON–DUNN, J., joined by OLIVER–PARROTT, C.J., filed a concurring opinion from part E of the opinion.

MIRABAL, J., voted against the en banc consideration of the rehearing, dissents (without opinion) from part A of this opinion relating to the wiretap statutes, and does not participate in the other issues considered by the court en banc.

HUTSON–DUNN, Justice, concurring to the en banc opinion on motion for rehearing.

Although I agree with the majority of the court on all other issues, I write separately on the issue of the statute of limitations because I disagree with Section E of the opinion.

In points of error three and four, the wife contends that the state wiretap statute, which does not set out a statute of limitations, is governed by the residual limitations provision in TEX.CIV.PRAC. & REM.CODE § 16.051 (Vernon 1986), which is four years.

Section 16.051, "Residual Limitations Period," provides:

> Every action for which there is no *express* limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues.

(Emphasis added.)

If no provision in any of the limitations statutes expressly applies to a cause of action for wiretap, the cause of action is governed by section 16.051. *Williams v. Khalaf,* 802 S.W.2d 651, 658 (Tex.1990) (because there was a provision for fraud, it was governed by four-year statute). For example, when a party brings a suit that is a statutory cause of action, even if the suit could be analogized to a common law cause of action, because it is not expressly listed in § 16.051, the four-year residual statute applies. *Wider v. First City Bank of Dallas,* 804 S.W.2d 160, 162 (Tex. App.—Dallas 1990) (suit against bank for refusal to honor checks was not a suit for debt, it was suit for violation of the UCC, and the limitations was governed by the residual statute).

There is no limitations statute that expressly applies to a wiretap cause of action. In amending the residual limitation provision in 1979, the legislature was charged with knowledge of the holdings of the courts. *Williams,* 802 S.W.2d at 657. Just as the adoption of section 16.051 changed the period of limitations for fraud from two to four years, that section changed all other periods of limitations for which there is no *express* limitations period. Nothing in the wiretap statute or in the statutes relating to limitations provides for a limitation period for this type of suit.

15. Justice Duggan, who retired on December 31, 1994, continues to sit by assignment for the dis-
position of this case, which was submitted before his retirement.

I would sustain the wife's points of error three and four and remand to the trial court the issue of damages for violations of the wiretap statute.

OLIVER–PARROTT, C.J., joins HUTSON–DUNN, J., in this concurring opinion.

HEDGES, Justice, dissenting in part and concurring in part.

I dissent from the decision to hear this case en banc. I join the majority in reversing the judgment and remanding the case for a new trial. However, I note that there is much that is wrong with Section C of the majority opinion, entitled "Exclusion of Valuation Testimony." In Section C, the majority first applies the wrong law, and then, when traversing the most difficult ground of its analysis, errs once more. The majority should have held that the husband and his partner, Hickson, as owners of the corporation, could testify as lay witnesses to the value of the corporation.

The majority intensively examines the subjects of disclosure of expert witnesses, "good cause" for failing to designate expert witnesses, supplementing discovery responses that concern the opinions of expert witnesses, etc. Absolutely none of this discussion is relevant, because the testimony admitted on valuation at trial *was not expert testimony.* The statement of facts shows that when the husband tried to introduce testimony on valuation, the wife's attorney objected. After hearing argument from both attorneys on the issue of admissibility, the trial court stated:

> The Court having reviewed the cases cited to the Court and heard the arguments of counsel is going to allow *lay opinion testimony* only by Collins and Hickson.

(Emphasis added.) Could it be any more clear that the issue here is whether *lay testimony* on valuation was admissible, *not* whether *expert* testimony on valuation was admissible?

The husband argues that the trial court was correct in admitting the testimony on valuation because he and Hickson could properly testify on the issue as lay witnesses. He is absolutely right: an owner or anyone with personal knowledge can assist the fact finder by expressing a lay opinion on the value of real or personal property. *See Laprade v. Laprade,* 784 S.W.2d 490, 492 (Tex. App.—Fort Worth 1990, writ denied) (value of corporation); *Bavarian Autohaus, Inc. v. Holland,* 570 S.W.2d 110, 115 (Tex.Civ. App.—Houston [1st Dist.] 1978, no writ); TEX.R.CIV.EVID. 701. The admission of such testimony should not be disturbed on appeal unless the admission was an abuse of discretion. *Laprade,* 784 S.W.2d at 492; *Hochheim Prairie Farm Mut. Ins. Ass'n v. Burnett,* 698 S.W.2d 271, 276 (Tex.App.—Fort Worth 1985, no writ). The holdings in cases like *Laprade* and *Bavarian Autohaus* show that the trial court's admission of the indisputably lay testimony was permissible. The authorities cited by the majority that define a party's duty in designating an expert and in disclosing and supplementing an expert's opinion are completely inapplicable *for the very reason that they concern expert opinion,* which, again, is not at issue here.[1]

The majority goes on to state that because the husband and his attorney said at the husband's deposition that the husband would not provide *any* testimony regarding valuation, which necessarily includes expert *and* lay testimony, the husband should have supplemented his response to discovery and informed the wife before trial that he intended to give evidence on valuation at trial after all. The majority concludes that the testimony was inadmissible because the husband failed to show good cause for not supplementing his response.

---

1. One such inapplicable authority is *Aluminum Co. of Am. v. Bullock,* 870 S.W.2d 2 (Tex.1994), relied on in several areas by the majority. The issue in that case, in the words of the court that decided it, was "whether good cause under Rule 215(5) exists to allow the testimony *of expert witnesses* who were not previously designated by the party calling them." *Id.* at 3 (emphasis added). This case, on the other hand, does not concern expert testimony, as the record explicitly demonstrates. Nor does this case have anything to do with the question of good cause; as is discussed below, the husband did not have to show good cause for not supplementing because he was not required to supplement.

There is no statute, no case, no authority *whatsoever* for the proposition that a party who says in a deposition that he will not testify on a matter at trial must "supplement" his deposition answers if he changes his mind and does decide to testify on the matter. In fact, one court of appeals has correctly stated as recently as last year that *"[t]here are no Texas cases that specifically require a deponent to supplement his deposition testimony." Navistar Int'l Transp. Corp. v. Crim Truck & Tractor Co.,* 883 S.W.2d 687, 691 (Tex.App.—Texarkana 1994, writ denied) (emphasis added). The same court also noted that "[n]or is there a procedural rule that requires a nonparty deponent"—like Hickson here—"to supplement his deposition testimony." *Id.*

The fact that there is no authority requiring a party who says in a deposition that he will not testify on a matter at trial to "supplement" his deposition answers if he changes his mind and does decide to testify is *critical.* In fact, it is not just critical; it is dispositive. As noted above, the standard of review for the admission of the valuation testimony is abuse of discretion. *See Laprade,* 784 S.W.2d at 492; *Hochheim Prairie Farm,* 698 S.W.2d at 276. An abuse of discretion in the admission of evidence occurs when the trial court acts contrary to guiding rules or principles. *Reichhold Chems., Inc. v. Puremco Mfg. Co.,* 854 S.W.2d 240, 247 (Tex.App.—Waco 1993, writ denied). If, as the *Navistar* court correctly noted, there is no case that specifically requires a deponent, party or non-party, to supplement his deposition testimony, how can the trial court have acted contrary to any guiding rules or principles in allowing the valuation testimony? Put another way, how could the trial court have acted "contrary to any guiding rules or principles" when there *are* no specific guiding rules or principles? The answer, of course, is that the trial court did not abuse its discretion.

Because there is no authority that required the husband to "supplement" the deposition testimony on valuation, Texas Rule of Civil Procedure 215(5), which penalizes a party for failing to supplement *when the party was*

*"under a duty"* to supplement, does not apply here. The majority's conclusion that the husband failed to show good cause for not supplementing is based on an erroneous assumption; the husband did not have to show "good cause" under rule 215 for not supplementing because there was no authority requiring him to supplement in the first place.

Even though the valuation testimony was admissible, the wife was not left without a response to it. She had at her disposal a very potent antidote to the testimony: impeachment. This is precisely what we said in *Ramsey v. Lucky Stores, Inc.,* 853 S.W.2d 623 (Tex.App.—Houston [1st Dist.] 1993, writ denied). In that case, we disagreed with the appellants that a Fort Worth opinion [2] "imposes a general duty on a deponent to supplement his deposition testimony." *Id.* at 630 n. 9. We expressly declined to decide whether Texas Rule of Civil Procedure 166b(6)(a) requires a deponent to supplement his deposition testimony. *Id.* at 630. In our discussion, however, we stated that "[w]e do note in general that any witness who testifies at trial differently from his deposition is subject to impeachment with the deposition testimony." *Id.* at 630 n. 9. The wife could have debilitated or even abolished the credibility of the husband and Hickson with deft use of their earlier statements that they would have no opinion to offer the jury on the very subject on which they were now asking the jury to accept their word.

The effect of the majority's holding on this issue is to transform what the witnesses and the husband's attorney said at the depositions into an imitation rule 11 agreement. The majority seeks to hold the witnesses and the husband's attorney to what they agreed to on the record—an inviting idea until one considers that the agreement, because it was not "in writing, signed and filed with the papers as part of the record" or "made in open court and entered of record" was completely unenforceable. TEX.R.CIV.P. 11. Rule 11 mandates that "[u]nless otherwise provided in these rules, *no* agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part

---

**2.** *Foster v. Cunningham,* 825 S.W.2d 806 (Tex.     App.—Fort Worth 1992, writ denied).

of the record, or unless it be made in open court and entered of record." *Id.* (emphasis added).

The agreement made by the witnesses and the husband's attorney does not comply with rule 11. How, then, can it be enforced at trial? The answer is that it can't.

For all of these reasons, I disagree with Section C of the "Combined En Banc and Panel Opinion on Motion for Rehearing." That section presents an analysis gone badly awry and, as a consequence, a holding that is very wide of the mark.

COHEN, J., joins HEDGES, J., in this opinion. DUGGAN, J., joins HEDGES, J., on the panel submissions of this issue.