**Jack Joseph DUFFY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–99–00375–CR.**

Court of Appeals of Texas,
El Paso.

Aug. 31, 2000.

Ronald L. Goranson, Milner Goranson Sorrels, Udashen Wells & Parker, Dallas, for Appellant.

Tom O'Connell, Crim. Dist. Atty., Sharon W. Curtis, McKinney, for State.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## *O P I N I O N*

ANN CRAWFORD McCLURE, Justice.

Jack Joseph Duffy appeals his conviction for the offense of unlawful interception of electronic communication. Following a bench trial, the court found Appellant guilty and assessed punishment at imprisonment for a term of two years, probated for two years, and a fine of $1,000. On appeal, Appellant challenges the legal and factual sufficiency of the evidence, and the validity of the indictment. We affirm.

### FACTUAL SUMMARY

This criminal prosecution arises out of conduct which occurred during divorce proceedings, which by all accounts became acrimonious. In March of 1996, Darlene Duffy filed a petition for divorce after twenty-six years of marriage to Appellant. Pursuant to the agreed temporary orders, both Darlene and Appellant continued to reside in the family residence, a two-story home near Wylie, Texas.[1] Darlene lived in the master bedroom downstairs while Appellant moved into an upstairs bedroom. Both parties had equal access to the remainder of the house, including the family study. Prior to finalization of the divorce and while Appellant still lived in the marital home, Darlene became concerned that Appellant was listening to telephone messages intended for her. She removed the answering machine from the telephone in the kitchen and obtained voice mail capa-

---

1. Darlene explained that the house was located on farm or ranch property out "in the country." The parties had six thoroughbred horses on the premises. It was necessary for Appellant to continue living there during the divorce proceedings to tend to the upkeep and to perform tasks which Darlene was physically unable to do.

bilities. According to Darlene, Appellant asked her for the access code to the voice mail but she refused to give it to him. Darlene's suspicions were further aroused when Appellant "seemed to ... know every move [she was] going to make before [she] made it," and she expressed her concerns to her attorney and her children. In particular, Appellant revealed that he knew where she had become employed, a matter she had gone to great lengths to keep private from him. Further, Appellant's divorce lawyer had seemingly anticipated a deposition that Darlene and her attorney planned to take. Because Darlene had discussed the deposition on the telephone with her attorney, she formed the opinion that Appellant, a vice president of marketing for a telecommunications company, had placed a "bug" on the telephones in the home. She began looking for it one evening when Appellant was not at home. She looked behind a cabinet in the study and found a black wire which did not match the telephone. When Darlene pulled on the wire, she saw that it went into the cabinet. After removing the books from the lower shelf of the cabinet, she found a "black box" which contained a microcassette tape. A red light was illuminated on the outside of the box. It appeared to be some type of tape recording device. Darlene played back the tape and discovered that it contained various telephone conversations between Darlene and other persons, including a conversation with her daughter, Pamela Duffy, from only minutes earlier, as well as conversations between Darlene and her attorney. Appellant had not been a party to any of these conversations.

Darlene called her daughter, Pamela, and her son, Steve. Pamela was already on her way to her parents' home because she had dinner plans with her mother and two other relatives; the others arrived shortly thereafter. Darlene showed them what she had found and played the tape. Steve insisted that they leave the house for a while so he could talk to Appellant. When Darlene returned home later that evening, she found Appellant in the study and confronted him about recording her telephone conversations. When she asked Appellant why he had done it, he told her that he wanted to "see what [she] was up to." Darlene later turned over the recording device to Mike Vance, an investigator with the Collin County Sheriff's Office.[2]

During cross-examination, Darlene admitted that she had found the recording device and made the wiretapping accusations approximately two weeks before the divorce was scheduled for final hearing. She had previously threatened to expose an illegality committed by Appellant's company if he did not agree to a continuance in the divorce proceedings. Darlene needed a continuance because she had hired new counsel to represent her. She also acknowledged that Appellant did not have ready access to the detailed long-distance billing statement although he was responsible for paying the telephone bill during this time period.

Pamela Duffy testified about the events of that evening as well as separate conversations she had with her father. When Pamela arrived at the house, her mother appeared extremely excited and upset and showed her what appeared to be a recording device. When Darlene played the tape on the family stereo, Pamela heard a conversation she had had with her mother only minutes before arriving at the house. At one point that evening, the family talked with Appellant. According to Pamela, accusations were made about the recording device and her father, for the most part, remained silent. He did not deny placing the device on the telephone. Appellant later admitted to her that he had placed the device on the telephone, but claimed he did so in order to prove which

2. At some subsequent point in the case, the Collin County District Attorney's Office lost the recording device and the tape.

long-distance telephone calls had been made by Darlene as opposed to those calls made by Pamela to her boyfriend who lived out of state.

Question by the prosecutor: I want you to state why he said he taped the phone. He was explaining to you. Tell us why. We don't want the whole story.

Answer by Pamela: Okay. He said his reason for doing this was because he was trying to combat or trying to prove that telephone bills, really expensive telephone bills, were—the charges were being made by my mother.

Q: Okay. So if he taped the phone conversations he could show that it was her calling these people and not you calling these people; is that right?

A: Right. The intention was that she was—that this was to record outgoing phone numbers, the touch tones, to prove that she was making phone calls.

Q: Basically if it's not your voice talking—your boy friend live out of state?

A: Not now. At the time he did.

Q: Basically if you tape the phone call, he can determine whether it's you talking on the phone long distance or if it's your mom talking on the phone long distance?

A: I believe the intent was the time of day. I'm not sure. I believe the intent was the time of day. I was at school. My procedure, I believe was school or work. My dad was at work; therefore, my mother would have been the only one who could have made those calls.

Pamela had also heard her mother threaten to file charges against Appellant if he did not agree to the continuance in the divorce case.

Mike Vance took the initial report from Darlene and received from her a recording device and tape. Vance said that the de-vice, which bore the label "dialed number recorder" did not appear to be a simple telephone answering machine. It had both a power source plug and a cord with a phone jack connected to it and it contained a microcassette. It appeared to him to have the capability of recording a telephone call.

At the conclusion of the evidence, the trial court expressly rejected Appellant's defense that he could not be found guilty in the absence of the actual device being introduced into evidence.[3] By finding Appellant guilty, the court impliedly found that Appellant had intentionally recorded the conversations, and therefore, rejected his defense that he intended only to record the numbers dialed.

Appellant testified during the punishment phase. He admitted placing the device on the telephone and admitted that it had the capability of recording calls, but he insisted that he installed the device for the sole purpose of recording the numbers dialed on the outgoing calls. He suggested that Darlene had found the device and changed the settings to record the calls.

## SUFFICIENCY OF THE EVIDENCE

In Points of Error Nos. One and Two, respectively, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction. The State responds initially that both contentions are waived because Appellant admitted his guilt during the punishment phase by acknowledging that he placed the recording device on the telephone. Even if the issues are not waived, the State maintains that the evidence is both legally and factually sufficient.

### DeGarmo Doctrine

The State's initial argument refers to the long-standing rule which has come to be known as the DeGarmo[4] doctrine:

---

3. Appellant does not pursue this complaint on appeal.

4. DeGarmo v. State, 691 S.W.2d 657 (Tex. Crim.App.1985).

[I]f a defendant does not testify at the guilt stage of the trial, but does testify at the punishment stage of the trial, and admits his guilt to the crime for which he has been found guilty, ... [t]he law as it presently exists is clear that such a defendant not only waives a challenge to the sufficiency of the evidence, but he also waives any error that might have occurred during the guilt stage of the trial.

*DeGarmo,* 691 S.W.2d at 661. *Accord McGlothlin v. State,* 896 S.W.2d 183, 186 (Tex.Crim.App.1995). However, the Court of Criminal Appeals has essentially abrogated the *DeGarmo* doctrine in recent years. *Reyes v. State,* 994 S.W.2d 151 (Tex.Crim.App.1999); *Leday v. State,* 983 S.W.2d 713 (Tex.Crim.App.1998). Even if it could be said that some aspect of the *DeGarmo* doctrine somehow survived *Leday,* it would not apply here since Appellant did not fully admit his guilt. To the contrary, he consistently denied having the intent to record any of his wife's telephone conversations or having actually set the recording device so that it would record conversations. We turn now to the sufficiency issues.

### Standards of Review

▮ In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must review all the evidence, both State and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App.1991). We do not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do so. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman,* 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson,* 819 S.W.2d at 843. Further, the standard of review is the same for both direct evidence and circumstantial evidence cases. *Geesa,* 820 S.W.2d at 158; *Chesnut v. State,* 959 S.W.2d 308, 311 (Tex.App.—El Paso 1997, no pet.).

▮ In reviewing factual sufficiency, we consider all of the evidence, but we do not view it in the light most favorable to the verdict. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *Levario v. State,* 964 S.W.2d 290, 295 (Tex.App.—El Paso 1997, no pet.). We will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis,* 922 S.W.2d at 129; *Levario,* 964 S.W.2d at 295. In conducting a factual sufficiency review, the reviewing court cannot substitute its conclusions for those of the fact finder. *Levario,* 964 S.W.2d at 295. It is not within the province of this Court to interfere with the fact finder's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Id.* Where there is conflicting evidence, the fact finder's verdict on such matters is generally regarded as conclusive. *Id.*

### Elements of the Offense

Omitting the formalities, the indictment alleged that Appellant did then and there:

[I]ntentionally and knowingly intercept and endeavor to intercept a wire, oral and electronic communication of Darlene Duffy by installing, affixing, and directing the installation of an electronic, mechanical, and other device to intercept and endeavor to intercept a wire, oral, and electronic communication....

Appellant was indicted pursuant to Section 16.02(b)(1) of the Texas Penal Code which

provides that a person commits an offense if he:

> [I]ntentionally intercepts, endeavors to intercept, or procures another person to intercept or endeavor to intercept a wire, oral, or electronic communication.

TEX.PEN.CODE ANN. § 16.02(b)(1)(Vernon Supp.2000).

A number of the terms used in this statute have the meaning assigned to them by Section 18.20 of the Texas Code of Criminal Procedure. *See* TEX.PEN.CODE ANN. § 16.02(a). The term "intercept" as used in the statute and the indictment means the aural or other acquisition of the contents of a wire, oral, or electronic communication through the use of an electronic, mechanical, or other device. TEX.CODE CRIM.PROC.ANN. art. 18.20, § 1(3)(Vernon Supp.2000). "Oral communication" means an oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation. TEX.CODE CRIM.PROC.ANN. art. 18.20, § 1(2). This term does not include an electronic communication. *Id.* "Wire communication" means an aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception, including the use of such a connection in a switching station, furnished or operated by a person authorized to engage in providing or operating the facilities for the transmission of communications as a communications common carrier. TEX.CODE CRIM.PROC.ANN. art. 18.20, § 1(1). Finally, "aural transfer" means a transfer containing the human voice at any point between and including the point of origin and the point of reception. TEX.CODE CRIM.PROC.ANN. art. 18.20, § 1(21).

### Analysis

■ Citing *Simpson v. Simpson*,[5] a case which concludes that the Federal Wiretapping Statute[6] was not intended to extend into the area of marital conflicts, Appellant argues that Section 16.02 is subject to a similar construction because it is modeled after the federal statute. He reasons that the placing of a device on one's own telephone, even if the device records the telephone conversations of the person's spouse, should not be a violation of the statute. Appellant's argument regarding the legislative intent behind Section 16.02 and alleged inapplicability of the statute to interspousal wiretaps is unpersuasive.

First, this contention is not properly raised in the context of a legal or factual sufficiency challenge because there is no exception to prosecution under Section 16.02 arising from the fact that the person placed a wiretapping device on his own telephone or that he intercepted a spouse's conversation.[7] *See* TEX.PEN.CODE ANN.

5. *Simpson v. Simpson*, 490 F.2d 803 (5th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974).

6. *Simpson* construed the Omnibus Crime Control and Safe Street Act of 1968, 18 U.S.C. §§ 2510 *et seq.*, which is sometimes referred to as "The Federal Wiretap Statute." *See Turner v. PV International Corp.*, 765 S.W.2d 455 (Tex.App.—Dallas 1988), *writ denied per curiam*, 778 S.W.2d 865 (Tex.1989). The Supreme Court specifically noted that denial of the application for writ of error should not be construed as either approval or disapproval of the court of appeals' holding regarding admissibility of the tape recorded conversations. *Turner*, 778 S.W.2d at 866.

7. Furthermore, the argument raised by Appellant does not constitute an affirmative defense to prosecution under Section 16.02. *See* TEX. PEN.CODE ANN. § 2.03 (Vernon 1994); TEX.PEN. CODE ANN. § 16.02(c)(Vernon Supp.2000). Under a former version of Section 16.02 not applicable here, the statute contained eleven exceptions rather than affirmative defenses. With the 1993 amendment of Section 16.02, those exceptions became affirmative defenses. See Act of May 28, 1989, 71st Leg., R.S., ch. 1166, § 16, 1989 TEX.GEN.LAWS 4783, 4791–92, amended by Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 TEX.GEN.LAWS 3586, 3608–09. *See also Hernandez v. State*, 938 S.W.2d 503, 506 nn. 3, 4 (Tex.App.—Waco 1997, pet. ref'd).

§ 2.02 (Vernon 1994).[8] Our only task in reviewing evidentiary sufficiency is to examine the evidence adduced at trial under the proper standards of review to determine whether the State has proven the essential elements of the offense beyond a reasonable doubt. If Section 16.02 provided an exception to prosecution as urged by Appellant, then the State would have been obligated to negate it in the indictment and to prove beyond a reasonable doubt that Appellant's conduct did not fall within the exception. *See McElroy v. State,* 720 S.W.2d 490, 492 (Tex.Crim.App.1986); TEX. PEN.CODE ANN. § 2.02 (Vernon 1994). Appellant then could have challenged the sufficiency of the evidence to support his conviction. However, only those exceptions so labeled must be negated. *See* Practice Commentary to Section 2.02; *Lopez v. State,* 846 S.W.2d 90, 94 (Tex.App.—Corpus Christi 1992, pet. ref'd). Section 16.02 does not contain any exception for interspousal wiretaps. *See Kent v. State,* 809 S.W.2d 664, 668 (Tex.App.—Amarillo 1991, pet. ref'd)(declining to apply the *Simpson* rationale to Section 16.02 because there is no statutory exception for interspousal wiretaps). *Accord Collins v. Collins,* 904 S.W.2d 792, 797 (Tex.App.—Houston [1st Dist.] 1995, writ denied). Consequently, we are unable to consider his argument in this context.

■■■ Even if we could consider an exception not expressly provided by the Legislature, we would not be inclined to do so under the authority cited by Appellant. As noted in *Collins,* only *Simpson* and one other federal court of appeals case [9] have held that the Federal Wiretap Statute exempts spouses from its prohibitions and both opinions have been widely criticized. *Collins,* 904 S.W.2d at 797, *citing e.g., Platt v. Platt,* 951 F.2d 159, 160 (8th Cir.

1989), *Heggy v. Heggy,* 944 F.2d 1537, 1539 (10th Cir.1991), *Kempf v. Kempf,* 868 F.2d 970, 972–73 (8th Cir.1989), *Pritchard v. Pritchard,* 732 F.2d 372, 374 (4th Cir. 1984), *United States v. Jones,* 542 F.2d 661, 667 (6th Cir.1976), *Walker v. Carter,* 820 F.Supp. 1095, 1097 (C.D.Ill.1993), *Nations v. Nations,* 670 F.Supp. 1432, 1434–35 (W.D.Ark.1987), *Flynn v. Flynn,* 560 F.Supp. 922, 924–25 (N.D.Ohio 1983), *Heyman v. Heyman,* 548 F.Supp. 1041, 1045–47 (N.D.Ill.1982), *Gill v. Willer,* 482 F.Supp. 776, 778 (W.D.N.Y.1980), *Kratz v. Kratz,* 477 F.Supp. 463, 467–72 (E.D.Pa. 1979), and Comment, *Interspousal Electronic Surveillance Immunity,* 7 U. OF TOL.L.REV. 185, 185–212 (1975); *see Turner,* 765 S.W.2d at 469–70. *See also May v. State,* 780 S.W.2d 866, 870 (Tex.App.— Dallas 1989, pet. ref'd). Like Section 16.02, the Federal Wiretap Statute does not contain an exception for wiretaps between spouses. *Kempf,* 868 F.2d at 973. Further, *Simpson*'s suggestion that Congress did not intend for the Federal Wiretap Statute to apply to spouses is directly contrary to the statute's legislative history because Congress actually anticipated that the statute would restrict the use of wiretap evidence in divorce proceedings. *Collins,* 904 S.W.2d at 797, *citing Kempf,* 868 F.2d at 973. Senator Long, chair of the subcommittee on Administrative Practice and Procedure of the Senate Judiciary Committee, stated that the "three major areas in which private electronic surveillance was widespread were (1) industrial, (2) divorce cases, and (3) politics." *Collins,* 904 S.W.2d at 797, *quoting Kempf,* 868 F.2d at 973. Additionally, Senator Hruska, a co-sponsor of the bill, commenting on the scope of the statute, noted that "[a] broad prohibition is imposed on private use of electronic surveillance, particu-

---

8. Section 2.02 of the Penal Code provides:
 (a) An exception to an offense in this code is so labeled by the phrase: 'It is an exception to the application of . . . . '
 (b) The prosecuting attorney must negate the existence of an exception in the accusation charging commission of the offense and prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception.
 TEX.PEN.CODE ANN. § 2.02 (Vernon 1994).

9. *Anonymous v. Anonymous,* 558 F.2d 677, 679 (2d Cir.1977).

larly in domestic relations and industrial espionage situations." *Id., quoting* S.Rep. No. 1097, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Admin.News 2112, 2274; *Kempf,* 868 F.2d at 973. For these reasons, we decline to follow *Simpson.* Further, we agree with *Collins'* holding that the common law and constitutional right of privacy recognized by Texas courts is not limited to unmarried individuals, and therefore, a spouse has a right of privacy under Section 16.02. *Collins,* 904 S.W.2d at 797. Accordingly, we conclude that Section 16.02 must be applied in all circumstances not specifically excepted. *See Kent,* 809 S.W.2d at 668.

 Reiterating the defenses offered at trial, Appellant additionally argues that the evidence is both legally and factually insufficient to support his conviction because it does not establish that the device found by Darlene is the same device he placed on the telephone, or even if it is, that he set the device to record Darlene's telephone conversations.[10] Considering first the legal sufficiency of the evidence, the trial court had before it evidence that the device was capable of recording telephone conversations and that Appellant told Darlene that he had placed the device on the telephone for the purpose of finding out what she "was up to." Taken in the light most favorable to the verdict, this evidence is legally sufficient to support Appellant's conviction because a rational trier of fact could have concluded beyond a reasonable doubt that Appellant intentionally intercepted a wire or oral communication through the use of the recording device placed on the telephone. Point of Error No. One is overruled.

 Regarding the factual sufficiency of the evidence, the trial court had before it substantially conflicting evidence on the question of Appellant's intent in placing the recording device on the family telephone and whether he set the device to record conversations as opposed to telephone numbers dialed from the family telephone. It was for the trial court to weigh the credibility of Darlene's and Pamela's testimony, to assign weight to their testimony on this question, and to draw deductions from all of the evidence. We note that both witnesses were impeached by exposure of their respective biases. Ultimately, the trial court resolved the conflict in favor of a finding of guilt. We are unable to conclude that this finding is so contrary to the evidence as to be manifestly unjust. Accordingly, Point of Error No. Two is overruled.

## VALIDITY OF THE INDICTMENT

 In his third point of error, Appellant asserts that the trial court lacked jurisdiction because the indictment failed to state an offense. He contends that the indictment improperly authorized conviction based upon an allegation that he "knowingly" intercepted a wire, oral, and electronic communication because Section 16.02 does not allow conviction based upon that lesser mental state. While Appellant is correct that the indictment improperly alleged that he both intentionally and knowingly committed the illegal conduct, the defect regarding the additional mental state does not render the indictment constitutionally void since the indictment accuses Appellant of a crime with enough clarity and sufficiency to identify the penal statute under which the State intended to prosecute. *See Duron v. State,* 956 S.W.2d 547, 550–51 (Tex.Crim.App.1997)(written instrument is an indictment or information under the Art. V, sec. 12(b) of the Texas Constitution if it accuses someone of a crime with enough clarity and sufficiency to identify the penal statute under which the State intends to prosecute, even if the

10. Appellant emphasizes certain statements by the trial court indicating its belief that a "pen register" is illegal under Section 16.02. However, as Appellant points out, he was not indicted for placing a pen register on his telephone. Regardless of whether the trial court was mistaken in its statements, the only question before us is whether the evidence supports Appellant's conviction.

instrument is otherwise defective). The failure of an indictment to allege *any* culpable mental state is a defect of substance which the defendant waives if not raised prior to trial. *State v. Murk*, 815 S.W.2d 556, 557–58 (Tex.Crim.App.1991)(failure of indictment charging defendant with public lewdness to allege culpable mental state was defect of substance, requiring pretrial objection to preserve issue for review); *State v. Oliver*, 808 S.W.2d 492, 493–94 (Tex.Crim.App.1991)(defendant waived substantive defects in indictments which charged him with possession of more than 400 grams of phenylacetone and less than 28 grams of methamphetamine, but omitted any reference to culpable mental state, when defendant failed to complain of defects prior to trial); *Prudhome v. State*, 989 S.W.2d 852, 854 (Tex.App.—Houston [14th Dist.] 1999, no pet.)(failure of an indictment to allege a culpable mental substance is a defect of substance which must be raised in the trial court or is waived; defendant waived asserted error by not objecting to indictment on ground that it failed to allege a culpable mental state); *see* Tex.Code Crim.Proc.Ann. art. 1.14(b)(Vernon Supp.2000)("If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding."). If an indictment containing no culpable mental state allegation falls within Article 1.14(b)'s objection requirement, it follows that an indictment which alleges the correct mental state, but erroneously includes an additional mental state not authorized by the statute, also constitutes a defect of substance that must be raised by motion to quash or other objection prior to trial. By failing to object to this defect prior to trial, Appellant waived error. Point of Error No. Three is overruled. Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.