Gary Randall CLAYTON, Appellant,

v.

James Michael RICHARDS d/b/a an ounce of Prevention, Appellee.

No. 06–00–00101–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 14, 2000.

Decided May 9, 2001.

J. Trenton Bond, Glen W. Morgan, Reaud, Morgan & Quinn, Inc., Beaumont, for appellant.

John E. Haught, Mehaffy & Weber, PC, Beaumont, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Gary Randall Clayton appeals from a summary judgment granted by the trial court to James Michael Richards d/b/a An Ounce of Prevention, one of two defendants named in this civil action. (Trial Court Cause No. D–162,111). The other defendant is Marie D. Clayton, Gary Clayton's estranged wife. Marie's Motion for Summary Judgment was denied. The summary judgment in favor of Richards was severed from the action against Marie and was designated by the trial court as cause number D–162,111–A. From the final summary judgment in cause number D–162,111 A, Gary Clayton filed a timely Notice of Appeal.

In his Motion for Summary Judgment, Richards contends 1) that plaintiff fails to state a claim on which relief may be granted; and 2) that there is no genuine issue of material fact and defendant is entitled to judgment as a matter of law. In Section II of his motion, under the heading "Factual Background," Richards alleges facts stated to be the basis of the lawsuit. Attached to the motion is only one exhibit, Exhibit "A," which purports to be a copy of a certificate from the Texas Board of Private Investigators and Private Security Agencies licensing An Ounce of Prevention as an "Investigations Company/Security Services Contractor Alarm Systems." Also attached to the motion is the affidavit of James Michael Richards, which states the following:

> My name is James Michael Richards. I am over the age of 18, have never been convicted of a crime, am fully competent to make this affidavit, and the facts herein stated are true and correct based upon my own personal knowledge. I have read the forgoing Motion for Summary Judgment and each fact set forth in the Motion for Summary Judgment is true and correct and is based upon my own personal knowledge.

The form of Richards's summary judgment motion is questionable. It is not supported by a proper affidavit and the notary public's form is one for an acknowledgment rather than an oath. However, no written objection was made to the form, and at oral argument, Clayton's appellate counsel specifically advised the court that he did not wish to raise the form as a basis of appeal.

### First Ground for Summary Judgment

The Motion for Summary Judgment contains two bases for the relief sought: it contends that Gary Clayton failed to state a claim for relief in his lawsuit and that there were no genuine issues of material fact and the movant was entitled to judgment as a matter of law.

Richards was obliged to file a special exception to the petition under Tex. R.Civ.P. 90 and 91 to challenge the legal sufficiency of the plaintiff's pleading. *Fort Bend County v. Wilson,* 825 S.W.2d 251, 253 (Tex.App.—Houston [14th Dist.] 1992,

no writ). Under the special exception procedure, the pleader must be given the opportunity to amend his pleading. If the pleader refuses to amend, or the amended pleading still fails to state a cause of action, then summary judgment may be granted. *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex.1998).

Clayton alleges in his original petition the following:

On or about June and July 1999, Defendants willfully, and without Plaintiff's knowledge or consent, invaded Plaintiff's privacy at his residence located at 6955 Shanahan Drive, Beaumont, Jefferson County, Texas, in an attempt to cruelly deprive Plaintiff of his right to be free from wrongful intrusion into his private affairs.

These allegations are followed by allegations of damages alleged to have resulted from the actions asserted in the preceding paragraph.

■■■ Generally, a motion for summary judgment alleging that plaintiff's pleadings fail to state a cause of action cannot take the place of special exceptions. *Swilley v. Hughes*, 488 S.W.2d 64, 66–67 (Tex.1972); *Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 269 (Tex.App.—Corpus Christi 1991, writ denied). A special exception is the appropriate vehicle to require plaintiff to state more fully, clearly, and specifically the facts on which the plaintiff relies. *Homme v. Varing*, 852 S.W.2d 74 (Tex.App.—Beaumont 1993, no writ). No special exception was filed in this case.

Because the trial court could not consider this matter on a motion for summary judgment, because the trial court did not specifically address granting the summary judgment on the ground that no cause of action was alleged, and because Texas does recognize an invasion of privacy which is generally alleged, *Billings v. Atkinson*, 489 S.W.2d 858 (Tex.1973), we assume the trial court did not render a summary judgment on this basis.

Furthermore, the Texas Supreme Court held in *Texas State Employees Union v. Texas Dep't of Mental Health and Mental Retardation*, 746 S.W.2d 203 (Tex.1987), that the Texas Constitution protects personal privacy from unreasonable intrusion and guarantees the sanctity of the home and person against unreasonable intrusion. In *Thomas v. Allsip*, 836 S.W.2d 825, 828 (Tex.App.—Tyler 1992, no writ), the Tyler Court of Appeals recited that a complainant must show (1) conduct in the nature of an intrusion; (2) private nature of the thing or place intruded upon; and (3) the intrusion was substantial and the conduct highly offensive or objectionable to the reasonable person. The pleadings in this case generally allege a recognized cause of action in Texas.

We shall next review the other basis for summary judgment. It relies on summary judgment proof under the facts of the case, not on the failure of the plaintiff to allege a cause of action.

■■■ The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). However, once the movant establishes that it is entitled to summary judgment, the burden shifts to the nonmovant to show why summary judgment should not be granted. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989). In reviewing a summary judgment, we accept all the nonmovant's proof as true and indulge every reasonable inference in the nonmovant's favor. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). All doubts about the existence of a genuine issue of a material fact must be resolved against the movant. *Johnson*

*County Sheriff's Posse, Inc. v. Endsley,* 926 S.W.2d 284, 285 (Tex.1996).

■ The concept of invasion of privacy covers intrusion on a party's seclusion, solitude, or private affairs. *See Boyles v. Kerr,* 855 S.W.2d 593 (Tex.1993); *Texas State Employees Union v. Texas Dep't of Mental Health,* 746 S.W.2d 203. Liability does not turn on publication of any kind. *See* DAN B. DOBBS, LAW OF TORTS § 426 (2000). The core of the tort of invasion of privacy is the offense of prying into the private domain of another, not the publicity that may result from such prying. *See Lovgren v. Citizens First Nat'l Bank of Princeton,* 126 Ill.2d 411, 128 Ill.Dec. 542, 534 N.E.2d 987 (1989).

RESTATEMENT (SECOND) OF TORTS 652B, cmt. a (1977), states as follows:

The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.

Gary Clayton swore by affidavit to the following statement of facts, which was contained in his Response to the Motion for Summary Judgment:

In May of 1999 Marie Clayton employed James Michael Richards to follow and videotape her husband, Gary Randall Clayton. Mr. Richards' surveillance included installing and setting up a video camera in the bedroom of Mr. Clayton. Ms. Clayton assisted Mr. Richards in the placement and installation of the video camera in the bedroom of Mr. Clayton. Ms. Clayton then left to visit her family in Virginia. . . . .

The camera was monitored by Mr. Richards while Ms. Clayton was in Virginia. Additionally, Mr. Richards went in and changed the videotape while Ms. Clayton was in Virginia visiting her family. . . . At all times while the bedroom of the Clayton home was being videotaped Gary Clayton was the sole occupant of the home and bedroom, and never gave permission to Mr. Richards or anyone else to enter his home or videotape him.

Clayton also included in his response a page from a deposition taken of Richards in the divorce proceeding. This excerpt of the deposition does not dispute the sworn statement in Richards's Motion for Summary Judgment, which states the following:

James Michael Richards, d/b/a An Ounce of Prevention, is an investigations company and security services contractor, licensed by the Texas Board of Private Investigators and Private Security Agencies. A copy of the certificate is attached hereto as Exhibit "A." Defendant, James Michael Richards, d/b/a An Ounce of Prevention, was contacted by defendant, Marie D. Clayton, regarding the rental and installation of a long duration camera at her home. Mrs. Clayton met with defendant Richards, inspected the equipment and agreed to rent it. A black and white video camera, remote receiver and video tape recorder were given to Mrs. Clayton.

At the request of Mrs. Clayton, Mr. Richards met her at her home and set up the remote receiver and recorder in a spare bedroom. Mrs. Clayton then took the black and white video camera which was contained within an AM/FM radio and placed it in her bedroom on her night stand facing the doorway to her bedroom.

Later in the week, Mr. Richards received a phone call from Mrs. Clayton who was then in Virginia. Mrs. Clayton requested that Mr. Richards travel to her home and change out the tape in the tape recorder. Mrs. Clayton made arrangements for a neighbor to provide Mr. Richards access to the home. Mr. Richards went to the home and met the neighbor who opened the door with a key and gave him access to the house. Mr. Richards entered the spare bedroom, changed the tape and departed the residence.

The following is summary judgment evidence that Marie Clayton initiated the installation of a camera in the bedroom that she shared with her husband: (1) Marie Clayton had been advised by a psychic that her husband had been committing adultery; (2) she retained the services of Richards to assist her in the installation; (3) Richards placed the video camera in a radio which Marie Clayton took to the personal bedroom and set beside the bed; (4) Richards set up the camera equipment, remote, receiver, and videotape in the spare bedroom; (5) Richards was accompanied by Marie Clayton on his first entry to the home; (6) Richards's other entry to the home was while Marie Clayton was away in Virginia; (7) on that occasion, at Marie Clayton's request, Richards changed the videotape in the tape recorder in the spare bedroom; and (8) Richards entered the home by obtaining a key from a neighbor at the instruction of Marie Clayton.

Even if the detective may have furnished only technical services in connection with acts constituting invasion of privacy, the private investigator may still be liable in tort if an actual invasion of privacy has been committed. *See* comments and illustrations of invasion of privacy under RESTATEMENT (SECOND) OF TORTS 652B; *see also LeCrone v. Ohio Bell Tel. Co.*, 120 Ohio App. 129, 201 N.E.2d 533 (1963) (telephone company held liable for invasion of privacy by assisting husband by placing a tap on the wife's private telephone line after she had separated from husband and moved into a different residence).[1]

The general rule in Texas is that those who pursue a common plan or design to commit a tortious act, actually take part in it or further it by cooperation or request, or to lend aid to the wrongdoer, or ratify or adopt his act are also liable for the tortious act. *See Century 21 Page One Realty v. Naghad*, 760 S.W.2d 305 (Tex. App.—Texarkana 1988, no writ) (quoting W. Prosser, *Handbook of the Law of Torts* § 46 (4th ed.1971)).

Because there is summary judgment evidence that Richards was working as an agent at the request and under instructions of Marie Clayton[2] and that he did not go beyond such request and instructions, we must determine whether her acts were illegal and tortious. If her acts were tortious, and if he knowingly aided her in the commission of the acts, then his acts were tortious also.

---

1. Unlawful interception of wire, oral, or electronic communications is a criminal act under TEX PEN.CODE ANN. § 16.02 (Vernon Supp. 2001). Courts further give weight to the fact that conduct is a crime when determining if it also amounts to a tort. DAN B. DOBBS, THE LAW OF TORTS § 2 (2000).

2. In the letter ruling by the trial judge, which was attached to the Nunc Pro Tunc Order

Granting Summary Judgment and incorporated by reference into the judgment, the trial judge determined that "Richards did nothing more than rent the equipment to Marie Clayton and assemble it. Any interest Mr. Clayton had in Richards not entering the premises would be a property interest of which Mrs. Clayton shared equally and authorized."

Although the suit against Marie Clayton had been severed from this cause of action, we must examine the summary judgment evidence in this case of her conduct because Richards's liability as her agent is tied to her conduct. If Richards had initiated the action and pursued the conduct alone, we would not have to examine the summary judgment evidence concerning Marie Clayton and Richards's actions would have been viewed as that of a stranger entering the Clayton home. On the other hand, if Richards had supplied technical support for a court-ordered surveillance, for example, wiretapping, his acts would be viewed as the agent of a principal doing a nontortious act.

The Family Code of the State of Texas is supportive of a monogamous relationship during marriage and makes adultery a ground for divorce. TEX. FAM.CODE ANN. § 6.003 (Vernon 1998). The Texas State Supreme Court observed that the United States Constitution does not include a right to privacy in a sexual relationship with a spouse of someone else. *City of Sherman v. Henry,* 928 S.W.2d 464, 471 (Tex.1996). In *City of Sherman v. Henry,*[3] Henry contended that because adultery is no longer illegal in Texas, his conduct should be constitutionally protected. However, the Court in the *Henry* case determined that although adultery is no longer illegal, it is still not favored in the law and pointed out that it is still used by Texas courts in dividing community assets. However, it should be pointed out that the *Henry* case involved governmental invasion of privacy in a situation in which the City of Sherman investigated an alleged prior adulterous affair of an officer seeking a promotion. This investigation did not involve any invasion into the home or videotaping.

 A spouse shares equal rights in the privacy of the bedroom, and the other spouse relinquishes some of his or her rights to seclusion, solitude, and privacy by entering into marriage, by sharing a bedroom with a spouse, and by entering into ownership of the home with a spouse. However, nothing in the Texas Constitution or our common law suggests that the right of privacy is limited to unmarried individuals. *Collins v. Collins,* 904 S.W.2d 792, 797 (Tex.App.—Houston [1st Dist.] 1995), *writ denied per curiam,* 923 S.W.2d 569 (Tex.1996) (the *Collins* case involved a statutory violation of the prohibition against the use of illegally intercepted telephonic communications).

 When a person goes into the privacy of the bedroom, he or she has a right to the expectation of privacy in his or her seclusion. A video recording surreptitiously made in that place of privacy at a time when the individual believes that he or she is in a state of complete privacy could be highly offensive to the ordinary reasonable person. The video recording of a person without consent in the privacy of his or her bedroom even when done by the other spouse could be found to violate his or her rights of privacy.

 As a spouse with equal rights to the use and access of the bedroom, it would not be illegal or tortious as an invasion of privacy for a spouse to open the door of the bedroom and view a spouse in bed. It could be argued that a spouse did no more than that by setting up a video camera, but that the viewing was done by means of technology rather than by being physically present. It is not generally the

3. For a general discussion on the constitutional right to privacy in Texas. *See* Shelly L. Skeen, *City of Sherman v. Henry: Is the Texas Constitutional Right of Privacy Still a Source of Protection for Texas Citizens,* 4 TEX. WESLEYAN L.REV. 99 (1997).

role of the courts to supervise privacy between spouses in a mutually shared bedroom. However, the videotaping of a person without consent or awareness when there is an expectation of privacy goes beyond the rights of a spouse because it may record private matters, which could later be exposed to the public eye. The fact that no later exposure occurs does not negate that potential and permit willful intrusion by such technological means into one's personal life in one's bedroom. It has been held that the taking of the picture in the privacy of a home without consent may be considered an intrusion of privacy.[4] *See generally* Phillip E. Hassman, Annotation, *Taking Unauthorized Photographs as an Invasion of Privacy*, 86 A.L.R.3d 374 (1978).

The summary judgment evidence does not show that Richards is entitled to judgment as a matter of law.

The judgment of the trial court is reversed, and the case is remanded to the trial court for trial.

ROSS, Justice, concurring.

Since this case presents an issue of first impression, I believe it helpful to analyze the issue in relation to the established privacy rights developed under the laws, both federal and state, pertaining to wiretapping. For example, federal law prohibits interspousal wiretapping within the marital home. *See* 18 U.S.C.A. §§ 2510–2513, 2515–2520 (West 2000); *Collins v. Collins*, 904 S.W.2d 792 (Tex.App.—Houston [1st Dist.] 1995), *writ denied per curiam*, 923 S.W.2d 569 (Tex.1996); *Turner v. PV Int'l Corp.*, 765 S.W.2d 455 (Tex. App.—Dallas 1988), *writ denied per curiam*, 778 S.W.2d 865 (Tex.1989); *accord Heggy v. Heggy*, 944 F.2d 1537 (10th Cir. 1991); *Kempf v. Kempf*, 868 F.2d 970 (8th Cir.1989); *Pritchard v. Pritchard*, 732 F.2d 372 (4th Cir.1984); *United States v. Jones*, 542 F.2d 661 (6th Cir.1976).[5] Texas law also prohibits interspousal wiretapping. *See* Tex.Pen.Code Ann. § 16.02 (Vernon Supp.2001); *Duffy v. State*, 33 S.W.3d 17, 24 (Tex.App.—El Paso 2000, no pet.); *Collins*, 904 S.W.2d at 796–97. The act of videotaping a spouse does not meet the technical requirements to come under these prohibitions. *See Duffy*, 33 S.W.3d at 23; *United States v. Torres*, 751 F.2d 875, 880 (7th Cir.1984). However, the underlying concern of both the federal and state wiretap statutes was to protect the right of privacy. *See Gelbard v. United States*, 408 U.S. 41, 48–50, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972); *Collins*, 904 S.W.2d at 797. An individual's right of privacy is compromised no less from being secretly videotaped than from being secretly recorded. A secret videotape of an individual who presumes to be in a private place is an even greater intrusion of privacy than

---

4. *Cf. Plaxico v. Michael*, 735 So.2d 1036 (Miss.1999), a father's actions in taking nude pictures of a mother's lesbian paramour from a window of a cabin in which the mother, daughter, and paramour lived following the parents' divorce did not amount to an intentional intrusion on the solitude or seclusion of the paramour, where the father's actions were to prove an illicit lesbian relationship affecting the minor daughter. The father sought such proof in support of his motion for modification of custody.

5. Only two federal circuits have read an interspousal exemption from the federal wiretap statute. *Anonymous v. Anonymous*, 558 F.2d 677 (2d Cir.1977); *Simpson v. Simpson*, 490 F.2d 803 (5th Cir.1974). These opinions have been widely criticized. *See Collins v. Collins*, 904 S.W.2d 792, 797 (Tex.App.—Houston [1st Dist.] 1995), *writ denied per curiam*, 923 S.W.2d 569 (Tex.1996); *People v. Otto*, 2 Cal.4th 1088, 9 Cal.Rptr.2d 596, 831 P.2d 1178, 1184–90 (1992); Scott J. Glick, *Is Your Spouse Taping Your Telephone Calls?: Title III and Interspousal Electronic Surveillance*, 41 Cath. U.L.Rev. 845 (1992).

secretly recording conversations. *Torres,* 751 F.2d at 878. Videotapes are a simultaneous audio and visual recording of events. *Ali v. State,* 742 S.W.2d 749, 754 (Tex. App.—Dallas 1987, writ ref'd).

Cases decided under the federal wiretap statute have found third-party invasions into the marital union to be egregious. "For purposes of federal wiretap law, it makes no difference whether a wiretap is placed on a telephone by a spouse or by a private detective in the spouse's employ. The end result is the same-the privacy of the unconsenting parties to the intercepted conversation has been invaded." *United States v. Jones,* 542 F.2d 661, 670 (6th Cir.1976). Even in the most noted case for an interspousal exception to the federal wiretap statute, the Fifth Circuit stated that "to our minds a third-party intrusion into the marital home, even if instigated by one spouse, is an offense against a spouse's privacy of much greater magnitude than is personal surveillance by the other spouse." *Simpson v. Simpson,* 490 F.2d 803, 809 (5th Cir.1974); *see Remington v. Remington,* 393 F.Supp. 898 (E.D.Pa.1975).

Based on these authorities, it is clear that married individuals retain rights of privacy, especially against third parties. The concern with these rights is evident from the federal and state wiretap statutes which have no exception for acts between spouses. By logical deduction, it can be reasoned that if unauthorized recording of a telephone conversation by one spouse against the other violates the unconsenting spouse's right of privacy, then unauthorized videotaping of a spouse's actions violates the same right of privacy.