COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 JORGE LIRA,
 a/k/a GEORGE LIRA,
  
                             Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-00-00477-CR
  
 Appeal from
  
 41st District Court
  
 of El Paso County, Texas
  
 (TC# 990D02081)
 
 




 

O P I N I O N

 

Appellant Jorge Lira appeals from his
conviction for capital murder.  We
affirm.

Facts

On December 18, 1996, Jeannette Kern,
an elderly widow, was found bound and strangled on her kitchen floor.  Several items, including her car, television
sets, VCRs, an antique rifle, and small curios were missing from her home.

Police quickly learned that Enriqueta Yu had provided in-home nursing care for Kern=s husband a few months prior to his
death in September 1996 and came to believe she was implicated in Kern=s murder.  Police also learned that Eva Moreno, a friend
of Yu and defendant Lira, may have also been involved in the burglary/murder.








Kern=s car was eventually found in Juarez,
Mexico at the home of the ex-wife of Constantino
Torres.  Torres implicated Moreno as
having been involved in Kern=s death.  Yu was
questioned and ultimately arrested by police. 
Moreno escaped to Mexico.

Lira, as a known associate of Moreno=s, was questioned by police.  A small silver box belonging to Kern was
discovered during a permissive search of his bedroom at his mother=s house.  Lira=s brother also told the police Lira
had been involved in the events of December 18.

Ultimately, Lira confessed to having
been involved in the burglary of Kern=s home and gave police a written
statement.  He also confessed he knew in
advance of the burglary that Yu and Moreno planned to kill Kern so she could
not identify anyone to the police.

Lira told police when Kern recognized
Yu, she opened the door, and the gang forced their way into the house.  Lira held her at gunpoint while another man,
Carlos, bound her with duct tape.  Yu
then injected Kern with what Lira believed was heroin.

Lira stayed with Kern while the
others took things from the house.  When
they were finished, Yu motioned to Lira to kill Kern.  Lira was scared to do so and told Carlos to
kill Kern.  Carlos and Yu then killed
Kern by strangling her with the strap of Kern=s purse.  Lira admitted the silver box found in his
bedroom had been taken from Kern=s house.








Lira did not testify at trial.  The jury heard evidence from two defense
witnesses that they did not believe him capable of violent behavior.  After a five-day trial, a jury found Lira
guilty of burglary and capital murder. 
He was sentenced to life imprisonment. 
This appeal timely followed.

Evidence of the Corpus Delicti

In his first issue, Lira contends the
State failed to prove that he participated in Kern=s murder and therefore failed to
prove the corpus delicti of the offense.  The term corpus delicti
means that proof exists of the fact that Athe crime in question has been
committed by someone.@  Fisher
v. State, 851 S.W.2d 298, 303 (Tex. Crim. App.
1993); Nathan v. State, 611 S.W.2d 69, 75 (Tex. Crim.
App. 1981).  The identity of the
perpetrator of the crime is not an element of the corpus delicti:  the inquiry focuses only on the harm brought
about by the criminal conduct of some person. 
Gribble v. State, 808 S.W.2d 65, 70 (Tex. Crim.
App. 1990), cert. denied, 501 U.S. 1232, 111 S.Ct.
2856, 115 L.Ed.2d 1023 (1991).

Although the precise identity of the
perpetrator need not be established to prove the corpus delicti,
Texas law applies the common‑law rule that an extrajudicial confession is
insufficient to support a conviction absent corroboration of the confession
with independent evidence.  Gribble, 808 S.W.2d at 70; Lott v. State, 60 Tex. Crim. 162, 131 S.W. 553 (1910).  The corroboration requirement ensures that a
person confessing to a crime is not convicted without independent evidence that
the crime was indeed committed.  Gribble, 808 S.W.2d at
71.








Where, as in this case, an
extrajudicial statement exists, the corpus delicti
rule requires us to consider all the record evidence, other than Lira=s confession, in the light most
favorable to the verdict.  Fisher,
851 S.W.2d at 303. 
With that scope of review in mind, we must determine whether the record
evidence tends to establish that someone committed the murder of Jeannette
Kern.  See id.

The quantum of independent evidence
required to corroborate an extrajudicial confession, and therefore establish
the corpus delicti, is not onerous.  Gribble, 808 S.W.2d at 71‑72; Bordman v. State, 56 S.W.3d 63, 72 (Tex. App.‑-Houston
[14th Dist.] 2001, pet. ref=d); Criner v. State,
868 S.W.2d 29, 30  (Tex.
App.‑-Beaumont 1994, pet. ref=d). 
There must, however, be some evidence which renders the corpus delicti more probable than it would be without the
evidence.  Rocha v.
State, 16 S.W.3d 1, 4 (Tex. Crim. App. 2000); Wooldridge
v. State, 653 S.W.2d 811, 816 (Tex. Crim. App.
1983).








 In this case, Mrs. Kern was found bound,
gagged, and strangled on the kitchen floor of her home.  There was evidence that a robbery/ burglary
had taken place including the fact that a garage door had been left open, cable
wires were left dangling from the wall, drawers were open, and a telephone
receiver was missing from its base. 
Significant personal property was missing from the home, including
televisions, VCRs, an antique rifle, a car, and several items from a curio
cabinet, including a small silver box. 
That box was found in Lira=s bedroom in a search conducted with
his mother=s and brother=s permission when police detained him
for questioning.[1]  The car was ultimately found in Mexico at the
home of the ex-wife of suspected co-conspirator Constantino
Torres.

The police quickly learned that Enriqueta Yu had been employed by Mrs. Kern to take care of
her husband prior to his death.  Yu was
implicated in the robbery and murder of Mrs. Kern.  Another woman named Eva Moreno was also
implicated in the robbery and murder. 
Moreno was a known associate of Lira=s and Torres=s. 
Finally, Lira=s brother, Mario, told police that Lira had been involved in
Kern=s murder.

Taken in the light most favorable to
the verdict, we find this evidence sufficient to corroborate Lira=s confession that he participated in
the underlying robbery of Kern=s home, evidence which in turn supports his capital murder
conviction.  Williams
v. State, 958 S.W.2d 186, 190 (Tex. Crim. App.
1997) (evidence of robbery at murder scene and discovery of stolen items at
pawn shop and identification of appellant as person who sold stolen property
established corpus delicti).  Because evidence of the corpus delicti corroborates Lira=s extrajudicial statement, we hold
that his statement was sufficient to support his conviction and overrule Issue
One.

The Motion to Quash








Lira next contends that the trial
court abused its discretion in overruling his motion to quash the
indictment.  Specifically, he complains
the indictment=s burglary allegation is defective
because it alleges that a property crime, burglary, was committed against a
human being.[2]  The jury ultimately found Lira guilty of
capital murder based on his 
participation in the underlying burglary.

The State, relying on article 1.14 of
the Code of Criminal Procedure, argues that Lira waived this point on appeal
because his motion to quash the indictment was not re-urged until the day of
trial.  However, Lira=s motion to quash was filed fifteen
days before trial.  That filing
constitutes a proper objection made Abefore the date on which the trial on
the merits commences . . . .@  Tex. Code Crim. Proc. Ann. art.
1.14(b) (Vernon Supp. 2002).  Article 1.14=s preservation requirement is
therefore satisfied and this point preserved for our review.








We review a trial court=s denial of a motion to quash an
indictment for an abuse of discretion.  State
v. Goldsberry, 14 S.W.3d 770, 772 (Tex. App.‑‑Houston
[1st Dist.] 2000, pet. ref=d) (citing Thomas v. State, 621 S.W.2d 158, 163 (Tex. Crim. App.  [Panel
Op.] 1980) (op. on reh=g)).  Such motions should be granted only when the
language concerning the defendant=s conduct is so
vague or indefinite as to deny effective notice of the acts allegedly
committed.  DeVaughn v. State,
749 S.W.2d 62, 67 (Tex. Crim. App. 1988); Jarnigan v. State, 57 S.W.3d 76, 92 (Tex.
App.-‑Houston [14th Dist.] 2001, pet. ref=d).  The defendant must also demonstrate that the
defect surprised or misled in the preparation of defense.  Burks v. State, 876
S.W.2d 877, 889 (Tex. Crim. App. 1994).  A valid indictment therefore need only
contain enough verbiage to identify the specific penal statute under which the
State seeks to prosecute the accused and to ensure the accused can prepare a
defense.  State v.
Carter, 810 S.W.2d 197, 199 (Tex. Crim. App.  1991); see Duron
v. State, 956 S.W.2d 547, 550-51 (Tex. Crim. App.
1997).

            There is nothing in the instant
indictment that is so vague or indefinite as to deny
Lira effective notice that he was on trial for capital murder arising from the
burglary of Kern=s house.  Restated,
Lira cannot demonstrate an abuse of discretion by the trial court occurred when
it refused to grant his motion to quash the indictment.  This conclusion is reinforced by the fact
that while Lira did complain of the alleged defect at trial, he made no claim
or showing at trial that the defect compromised his defense.  Burks, 876 S.W.2d at
889.








Furthermore, generally the State need
not plead with additional specificity those matters which are statutorily
defined in the alternative where the matter is not an act or omission of the
defendant.  DeVaughn,
749 S.W.2d at 68; see e.g., Allison v. State, 618 S.W.2d 763
(Tex. Crim. App. 1981) (failure to specify Aowner@ or Aeffective consent@ did not deny notice); Linville v.
State, 620 S.W.2d 130, 131 (Tex. Crim. App. 1981)
(robbery indictment need not further define Ain the course of committing theft@); Hall v. State, 640 S.W.2d
307, 309 (Tex. Crim. App. 1982) (attempted  murder indictment may allege only Awith intent to commit murder@ without further addressing the
variety of acts which might constitute murder). 
Because a burglary may be committed anywhere within the county, the
State is not required to allege a specific location as an element which it must
prove at trial.  Pinkerton
v. State, 660 S.W.2d 58, 63 (Tex. Crim. App.
1983).  Thus, although this
indictment did not allege that Kern=s house was the specific situs of the burglary, this is not a fundamental
defect.  Lira=s Issue Two is therefore overruled.

The Extraneous Offenses Evidence

In his final issue, Lira contends the
trial court abused its discretion by permitting the introduction of evidence
that Lira was a Atank boss@ and committed violent acts while confined in jail prior to
trial.  He further maintains this
evidence was not relevant because it failed to establish any element of the
offenses with which he was charged and occurred subsequent to the offense.  For its part, the State asserts that Lira
failed to preserve this point for our review. 
We first address the waiver argument.

A timely and specific objection must
be made at trial to preserve error for appellate review.  Tex. R. App. P. 33.1(a); Davila v.
State, 930 S.W.2d 641, 650 (Tex. App.--El Paso 1996, pet. ref=d).  The point of error raised on appeal must also
comport with the objection made at trial or the point of error is waived.  Turner v. State, 805
S.W.2d 423, 431 (Tex. Crim. App. 1991); Davila,
930 S.W.2d at 650.








During the guilt/innocence phase of
trial, the defense presented several witnesses including Lira=s sister, Juanita Pantoja.  On direct examination, defense counsel
questioned Pantoja as follows:

Q         (By Mr.
Brady) Now, do you know George=s reputation in the community for being--whether he=s violent or not?

 

A         No.

 

MS.
MERAZ:  Objection, Your Honor.  It=s
not the punishment phase of the trial. 
Character is not an issue.

 

THE
COURT:  She=s already stated no. 
She=s
already answered no. Proceed.

 

Q         (By Mr.
Brady) Do you know whether or not he=s
aggressive.

 

A         I don=t--

 

MS.
MERAZ:  Same objection, Your Honor.

 

.   .   .

 

THE
COURT:  Overruled.

 

Q         (By Mr.
Brady) You don=t know
whether or not he=s an aggressive person?

 

A         He=s not.

 

Q         Have
you ever known him to be in trouble with the authorities?

 

MS.
MERAZ:  We=re going
to object, Your Honor, to character evidence of the defendant.  His character is not in issue.

 

MR.
BRADY:  His character is in issue, Your
Honor.  It=s a murder trial.

 

THE
COURT:  Sustained at this time.

 

.   .   .








 

Q         (Redirect
by Mr. Brady) Okay.  Have you ever known George to lie, cheat,
steal, be violent, anything of that nature?

 

A         No.

 

.   .   .

 

Q         (Recross by Ms. Meraz) Okay.  Now, you said that you don=t know George to steal, or --and that he was an honest
person?

 

A         That=s correct.

 

Q         Okay.  Now, Ms. Pantoja,
did you know that on February 24th of 1998--

 

MR.
HUGHES:  Objection, Your Honor.  May we approach?

 

MS.
MERAZ:  They opened the door, Your Honor.

 

.   .   .

 

He=s not
violent and nonaggressive, so they have opened that.
Now they say he=s honest and doesn=t lie.  We have
these records on these dates, he extorted commissary [sic], started fights--

 

.   .   .

 

We have
information from the jail, Your Honor, that the
defendant has engaged in numerous bad acts in the jail.  I believe they have opened the door by saying
he=s not violent and not aggressive, you know, that he=s an honest person.

 

.   .   .

 

THE
COURT:  . . .
How is it that she is--she would know anything that occurred in the jail.

 








MS.
MERAZ:  Well that=s it, Your Honor. 
If she=s making
a point--a blanket statement saying that he=s honest
and fair-dealing, we get to attack the >do
you know= questions.

 

.   .   .

 

MR.
BRADY:  Your Honor 404(b) . . . evidence
of other crimes, wrongs or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.  It may be admissible for other purposes, and
it talks about-- . . . proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absent mistake or--

 

Essentially,
Your Honor, 404 . . . says that a defendant in a criminal case, his character
is in evidence from the beginning of the trial, by reading the indictment.  We=re
entitled to bring in general character traits, Your Honor, to rebut that.

 

The
State of Texas is not entitled to use specific acts of misconduct to rebut what
we have put in, unless they are attempting to show one of the things under the
extraneous offense exception.

 

.   .   .

 

Now,
they can come in with other witnesses . . . that know George Lira. And those
other witnesses can testify as to his character, his character traits that they
know him to have from their knowledge of the particular person.

 

But just
to bring extraneous offenses at this point, it=s
improper, it=s inadmissible, and I would submit to the Court it=s very likely to be reversible error. 

 

.   .   .

 

THE
COURT:  [U]nder
Rule 405, specific instances of conduct, it could also be admissible.  And I find that, now that it has become a
part of the defense in this case, that specific instances of conduct may, in
fact, be admissible.  However, I am also
going to find that there is just no way that this person could have any
knowledge of any alleged crimes to have occurred in the jail.  And if you want to make proof of those, it
will not be through this witness.

 








So the objection as to getting--eliciting that
information from this witness is sustained.

 

MS.
MERAZ:  Your Honor, we=re getting the case law that says we can get it under
the >do you know=
questions.

 

THE
COURT:  It is sustained.  You can bring in what other evidence on that
that you see fit.

 

MS.
MERAZ:  Okay.  But you said we could prove it up through
other witnesses, right?

 

THE
COURT:  It appears to have now become
admissible, yes.

 

.   .   .

 

Q         (Direct
by Ms. Meraz) Okay. 
Ms. Pantoja, previously you stated that your
brother was not violent, was not aggressive, didn=t steal and was honest; is that right?

 

A         That=s right.

 

Q         Okay.
Ms. Pantoja, did you know that on April 29th of 19---

 

MR.
HUGHES:  Your
Honor, excuse me.  We object to this
under Rule 404 and Rule 405 of the Texas Rules of Criminal Evidence.  We believe this is improper
cross-examination, and we would like to state our objection for the record,
Your Honor.

 

THE
COURT:  The objection is overruled.

 

.   .   .

 

Q         (By Ms.
Meraz) Okay. Ms. Pantoja .
. . [a]nd did you know that, back on August 9th of
1997, your brother was in a fight trying to be a tank boss?

 

A         No.

 

Q         And
back on May 28th 1998--








MR.
HUGHES:  Objection, Your Honor.  Ms. Meraz is
testifying.  This is improper
cross-examination.  She=s stating a fact . . . We object.  That=s
improper cross-examination.  Even under the rules of evidence, it=s
improper cross-examination.

 

THE
COURT:  Overruled.

 

.   .   .

 

Q         And
also, on June 28th of 1999--

 

MR.
HUGHES:  Objection, Your Honor.  Your Honor, I would point the Court out to
the State=s notice of extraneous [sic], contained in the Court=s file under the Court=s 28.01
order and under Rule 404(b) motion, which we filed.  They have gone into at least two items not
listed there.  We object and request a
mistrial, Your Honor.

 

THE
COURT:  Your objection is overruled.  Your request for a mistrial is denied.

 

.   .   .

 

MS.
MERAZ:  State closes.

 

THE
COURT:  Does the defense close?

 

MR.
HUGHES:  Yes, Your
Honor . . . .

 

We have quoted extensively from the
record to demonstrate several points. 
First,  the
only objections Lira made to the State=s line of questioning concerning his
bad acts in jail was that it constituted improper cross-examination pursuant to
Rules 404(b) and 405.  On appeal,
however, Lira argues that the trial court abused its discretion by admitting
this evidence pursuant to Rules 403 and 401. 
To the extent that he relies upon Rules 403 and 401, his Issue Three is
overruled as waived.








Second, Lira did object to the State=s questioning on the basis of Rule
404(b) at trial and now raises that issue on appeal.  However, this record demonstrates Lira opened
the door concerning his character. 
Indeed his own counsel argued that character is always at issue in a
murder case.  Because Rule 405(b) permits
proof of specific instances of a person=s conduct to prove character, the
questioning was proper.  Tex. R. Evid. 405(b).

Third, Lira apparently argues that
because Pantoja was questioned about three offenses
that were not listed in the State=s notice of extraneous offenses, the
questioning should have been excluded for procedural reasons.  However, pursuant to Rule 404(b), the notice
of extraneous offenses concerns only that evidence which the State will
introduce in its case-in-chief.  Tex. R. Evid. 404(b).  In this instance, the disputed questioning
occurred during cross-examination after the State=s case closed and the defense was
putting on its case.  Thus no error
occurred, and Lira=s Issue Three is overruled on that ground.








Finally, even if we were to find that
reversible error occurred under any of Lira=s  theories, Lira=s harm analysis fails. 
He argues that the introduction of this evidence resulted in harm
because he was unable to rebut the State=s evidence and A[t]he jury was forced to conclude
that Appellant was generally a violent person and was, therefore, guilty of the
instant offense.@  This ignores the fact
that Pantoja denied every allegation of violent
behavior asserted by the State.  Whether
or not that testimony was credible or convincing is solely a matter for the trier of fact, not this Court.  Duffy v. State, 33
S.W.3d 17, 22 (Tex. App.‑‑El Paso 2000, no pet.).

In short, on this record we find no
abuse of discretion concerning the trial court=s decision to allow the State to
cross-examine Pantoja with evidence of extraneous
offenses.  Lira=s Issue Three is thus overruled.

Conclusion

The trial court=s judgment is affirmed.

 

                                                                        


SUSAN
LARSEN, Justice

July 18, 2002

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.

 

(Do Not Publish)

 











[1]Although
Lira objected to this search as illegal at trial, he does not raise this issue
on appeal.





[2]The
portion of the indictment which Lira challenges reads as follows:

 

GEORGE LIRA, hereinafter referred to as
Defendant,

PARAGRAPH A

did then and
there intentionally cause the death of an individual, namely, JEANNETTE KERN by
strangling the said JEANNETTE KERN with a ligature, and the said Defendant
was then and there in the course of committing and attempting to commit the
offense of BURGLARY of JEANNETTE KERN, . . . .

 

(Emphasis delineating disputed
language).